In the Matter of the Estate of William Nye, Deceased, Bonita Louise Grove Webster *v.* First National Bank of Warsaw, Warsaw, Indiana, Robert E. Nelson, Kathern R. Nelson, Donald Baum, Theodosia Baum, United Methodist Church of Warsaw, Indiana, and James Whitcomb Riley Hospital (Trustees of Indiana University).

[No. 1271A259. Filed August 6, 1973. Rehearing denied October 9, 1973. Transfer denied April 10, 1974.]

William R. Clifford, Jones, Withers & Clifford, of Anderson, for appellant.

Byron C. Kennedy, Herbert H. Bent, Rockhill, Kennedy, Pinnick, Sand & Bent, of Warsaw, for appellee First National Bank of Warsaw, Indiana; Byron P. Hollett, Virgil L. Beeler, Jerry D. Harner, Baker & Daniels, of counsel, for appellee The Trustees of Indiana University.

## I.

WHITE, J.—What is at stake here is the residue of a decedent's estate. The question is whether James Whitcomb Riley Hospital for Children, Indianapolis, takes it by virtue of testator's Indiana will or whether his deceased wife's nieces and nephew take it under a later Florida will which, if valid, revokes his earlier Indiana will.[1] That the Indiana will is valid unless so revoked is not disputed. The only dispute is whether the Florida will was valid when executed. That dispute was litigated in Florida where it was adjudged, in Riley Hospital's contest of the Florida will, that the Florida will is valid. When appellant, a residuary legatee of the Florida will, contested the Indiana will in Indiana the trial court refused to accept the Florida judgment as con-

---

1. The Indiana will was twice amended by codicils. The term "Indiana will" wherever used in the text of the opinion includes those codicils.
. No beneficiary of the Indiana will is bequeathed less by the Florida will except Riley Hospital which takes nothing under the Florida testament.

clusive. Instead, it heard the evidence and held that the Florida will was not validly executed under either Indiana or Florida law and confirmed the probate of the Indiana will. That judgment is before us on this appeal.

We reverse.

## II.

We shall hereinafter refer to the decedent, William Nye, as "testator", since by everyone's version he did die testate, either by virtue of his death bed Florida will or his earlier Indiana will. He was born in Warsaw, Kosciusko County, Indiana, June 10, 1882, and died, at eighty-eight years of age, June 14, 1970, in Bradenton, Manatee County, Florida. He grew up, married, and engaged in the retail jewelry business in Warsaw until he reached retirement age. His wife died in 1951 (when he would have been 68 or 69 years old). No children were ever born to his marriage and it appears that he was survived by no blood relatives (or at least none close enough to be mentioned as such in either of his wills). In 1925 testator and his wife began to spend a part of every winter in Florida. After her death he sold his dwelling house in Warsaw. (So far as the record discloses, it may have been the only real estate he ever owned.) He then began to spend more time each winter in Florida, but returned every spring to Warsaw where he stayed in a furnished apartment in a friend's house. Testator paid rent for the apartment while he stayed in it but not while he was in Florida, even though it was never occupied by anyone else. In Florida he lived in a mobile home court where he leased space for a mobile home, titled in his name and the name of Donald Baum of Warsaw (a beneficiary of both wills whose relationship, if any, to testator is not disclosed by the record). When testator was not in Warsaw he left no tangible property there (and had none elsewhere in Indiana) but he did maintain a safe deposit box in the First National Bank in Warsaw in

which he kept the paper evidences of his considerable intangibles, including certificates of ownership of several shares of stock in that bank and in another bank in Kosciusko County, certificates of deposit in those banks, a U.S. Government bond, and shares of paid-up stock in a Warsaw building and loan association.[2] The record contains no estimate of the total value of his estate nor of his Warsaw-related intangibles. It does disclose, however, that his total bank deposits exceeded $100,000.00 and it seems a fair guess that the value of his bank stock was even greater.

Testator's Indiana will (replacing an earlier will) was executed at Warsaw, September 23, 1966. Minor changes were made by codicils in 1968 and 1969. By this will specific bequests were made to his deceased wife's nieces and nephew, to friends, and to the Warsaw Methodist Church. The bulk of his estate, including all his stock in the Warsaw bank, was given by residuary bequest to James Whitcomb Riley Hospital for Children.

On June 6, 1970, while still in Florida, but about to return to Warsaw for the summer, testator fell and broke his hip. He was taken to the Manatee Memorial Hospital in Bradenton, Florida, where he remained until he died on June 14, 1970. Robert Nelson, his nephew by marriage who, under the Indiana will, was to share in testator's estate only to the extent of receiving one-fifth of his stock in the Mentone bank, arrived soon thereafter. Nephew Robert employed a local attorney who drew a will which was signed by testator on June 12, 1970. That will, the Florida will, increased the bequest to the Warsaw Methodist Church from $2,000.00 (per the last codicil to the Indiana will) to $3,000.00 and gave $10,000.00 "to Donald Baum and Theodosia Baum, Warsaw, Indiana, share and share alike", rather than, as by the Indiana

---

2. On the day before testator died, everything was removed from that box by his nephew-in-law, Robert Nelson, executor of the Florida will, who acted pursuant to a power of attorney purportedly executed by testator shortly before he signed his Florida will.

will, one-fifth of the stock of the Mentone bank to each.[3] The rest and residue of the estate was given, one third each, to the nieces and nephew, "Robert E. Nelson, 328 Sturges Parkway, Elmhurst, Illinois", "Kathern R. Nelson, of Detroit, Michigan", and "Bonita Grove Webster, of Anderson, Indiana", obviously a considerable enlargement of the Indiana bequest of one-fifth of the Mentone bank's stock to each. This left nothing for the James Whitcomb Riley Hospital, nor was the hospital mentioned in the Florida will. Robert Nelson was named executor.

The day after the Florida will was executed Robert Nelson arrived at the Bank (i.e., the First National Bank of Warsaw, Indiana, executor of the Indiana will) and by virtue of a power of attorney which testator had signed on June 8, 1970, was permitted to open testator's safe deposit box and remove its contents (which did not include his Indiana will, it being in the possession of his Indiana attorneys who are also attorneys for the Bank).

The next day, June 14, 1970, testator died. On June 16, 1970, the day of his funeral in Warsaw, his Indiana will was probated at Warsaw and the Bank was appointed executor. Three days later, June 19, 1970, his Florida will was probated in the County Judge's Court in and for Manatee County, at Bradenton, Florida, and Robert E. Nelson was appointed executor.

On July 3, 1970, the Trustees (i.e., James Whitcomb Riley Hospital) commenced a contest of the Florida will by filing in the Florida court where it was probated a petition to set aside the probate of the Florida will. Their petition alleged, (1) that testator was a resident of Kosciusko County, Indiana, not of Florida; (2) that the Florida will was not executed in the manner provided by Florida law; (3) that

---

3. Which of the Baum legacies is more valuable is not apparent, except that the Baums, though not plaintiffs below, have joined in the appellant's brief in support of the Florida will. See note 4.

its execution was procured by Robert Nelson's undue influence; and, (4) that testator was incompetent.

On October 20, 1970, the Florida court held a hearing on the issue of the legality of the manner in which the Florida will was executed. On October 22, 1970, the Florida court issued its "Order of Confirmation of Probate as to Execution of Will" in which it was "ordered and adjudged. . . . That the petition for revocation of probate as to improper execution be and the same is hereby denied . . . [and] the petition for confirmation in regard to proper execution of the will be and the same is hereby granted and probate is hereby confirmed as to the due and proper execution of the Will."

On December 14, 1970, the action from which this appeal arises was commenced. Bonita Louise Grove Webster, a niece and residuary legatee of the Florida will, filed her "Complaint to Contest Validity of Will". It alleged that the Indiana will had been revoked by the Florida will and also recited what had occurred (to that date) in the Florida will contest. All other beneficiaries of both wills and the First National Bank of Warsaw (hereafter "Bank") were made parties defendant but the record is unclear as to service. Appearances and answers are shown only for the Bank and the Trustees.[4]

While this Indiana will contest was still pending (in the Wabash Circuit Court on change of venue from the Kosciusko Circuit Court) and prior to its submission for trial, the trial of the Florida will contest was concluded. On March 18, 1971,

---

4. Appellant's (i.e., Bonita Louise Grove Webster's) Brief and her reply brief both conclude with the statement that "Defendant-Appellees, Robert E. Nelson, Kathern R. Nelson, Donald Baum, and Theodosia Baum, join in this brief [or Reply Brief] of the Plaintiff-Appellant". Mr. Clifford signs for his firm as "Attorneys for Plaintiff-Appellant . . . [whom he names] and for [the above named] Defendant-Appellees . . . [whom he names]." His authority has not been challenged. The only defendant-appellee besides those who appeared and those whom Mr. Clifford represents is the United Methodist Church of Warsaw which would be $1,000.00 (or 50%) better off if the Florida will prevails over the Indiana will.

the Florida court handed down its "Final Judgment" in which it recited detailed findings that (1) testator was domiciled in Manatee County, Florida, at death, (2) there was no undue influence, and (3) testator was competent. Thereupon the following was

"ORDERED AND ADJUDGED:

"1. The Court does hereby reaffirm that Order entered the 22nd day of October, 1970 confirming the Order of Probate as to the execution of the Last Will and Testament of the decedent, William Nye.

"2. The Court reaffirms the directed verdict in favor of the Respondents herein granted at the close of all of the evidence following the trial herein as to the testamentary capacity of William Nye, deceased.

"3. William Nye was domiciled in the State of Florida, County of Manatee.

"4. Neither Robert E. Nelson nor any other person exercised any undue influence upon or against the decedent and that the Order of Probate originally entered herein is hereby confirmed in all respects and that Robert E. Nelson, as executor, may proceed with the administration of the Estate of William Nye, deceased."

That Florida judgment was brought before the Indiana trial court by affidavits and certified copies appended to a motion for summary judgment filed by plaintiff in response to the defendant Bank's motion for summary judgment. At that time the Indiana will contest was at issue on plaintiff's complaint and on answers by defendants Bank, the executor, and the Trustees, the principal Indiana will's beneficiary. Those answers alleged that the Florida will was invalid because (1) testator was incompetent, (2) duress, (3) fraud, (4) undue influence, and (5) execution not in compliance with law.

After a hearing on the two opposing motions for summary judgment, the court overruled plaintiff's motion and took the defendant Bank's motion under advisement. Thereupon the parties agreed to submit to the court for trial "the issue of

domicile." It was stipulated that the evidence would be the record before the court "on the Plaintiff's motion for summary judgment respecting domicile and the Defendants' responses thereto, such record to include and be limited to all presently filed depositions . . . and affidavits and exhibits thereto." It thus appears that the trial court had before it substantially the same evidence as that on which the Florida court concluded that testator was domiciled in Florida. The trial court also had before it the Florida court's finding and judgment, and other evidence of the Florida proceedings. The Indiana court nevertheless found and concluded that testator died domiciled in Kosciusko County, Indiana.

The trial court's findings of fact noted that the Bank "was not a party or in privity with any party to the Florida will contest proceedings". Its conclusions recited that the Bank, as executor, "is a necessary party to this will contest action and has the legal right and duty to defend the [Indiana] will." The court also concluded that "[t]he judgment or order of the . . . [Florida court] that William Nye died domiciled in the State of Florida is not binding on the Court or oust this Court from jurisdiction to determine the issues of this will contest action, including the issue of domicile."

## III.

Whatever may have been the purpose for which domicile was an issue in Florida or the purpose for which the parties agreed to submit to the court for trial in the Indiana contest, it is nevertheless an issue which affects interests other than those affected by the question of whether the Florida or the

5. The record suggests that domicile may have been considered jurisdictional. That question is discussed in Hopkins, *The Extraterritorial Effect of Probate Decrees*, 53 Yale L.J. 221, 240, n. 37 (1944) as follows:

"As already pointed out, the statement that domicile is a jurisdictional fact in probate matters is somewhat misleading, since it is universally conceded that presence of property in a state is a factor warranting a local administration. Domicile is a jurisdictional fact only in the rare case where there is no property in the state of admin-

Indiana will is testator's last will.[5] It is among the lessons taught by *Riley* v. *New York Trust Company* (1942), 315 U.S. 343, 86 L. Ed. 885, 62 S. Ct. 608, that because those interests were not represented in the Florida court we must find against appellant's contention that the Florida judgment is conclusive as to decedent's domicile.

*Riley* involved, as does the case at bar, the extraterritorial effect of a finding of domicile in support of a judgment confirming probate of a will. The United States Supreme Court there said:

"So far as the assets in Georgia are concerned the Georgia judgment of probate is *in rem;* so far as it affects personalty beyond the state, it is *in personam* and can bind only parties thereto or their privies. This is the result of the ruling in *Baker* v. *Baker, Eccles & Co.*, 242 U.S. 394, 400, 61 L. Ed.

istration. Domicile, however, is important in determining the extra-territorial effect to be given to a foreign probate judgment under the conflict of laws rule of the forum. It may also be important in determining choice of law and other problems arising in an administration proceeding, including whether probate in F-2 should be an original proceeding or made pursuant to a statute permitting probate on authenticated copy of an F-1 proceeding, and whether local assets should be transmitted to another state for distribution at the domicile. Since the maxim *mobilia sequuntur personam* is in fact extensively applied for various purposes in administration proceedings, the decedent's domicile is a matter of paramount importance. But, with very few exceptions, it is not a jurisdictional fact in the sense of determining the validity of a judgment in the state where rendered. Statutes fixing local jurisdiction to grant letters of administration frequently provide for such power in a court of the county or territorial district where decedent was domiciled at the time of his death, without regard to the place of his death or the situs of his property. It was formerly held in many states that a finding and adjudication that such domicile existed was subject to collateral attack, but nearly all states now hold to the contrary. 2 WOERNER, THE AMERICAN LAW OF ADMINISTRATION (3d ed. 1923) 672. During the last decade the decedent's domicile also became a jurisdictional fact, for the limited purpose of determining state power to levy an inheritance tax upon intangible assets. But under the latest pronouncement of the Supreme Court on that vexed question it is held that the Fourteenth Amendment no longer confines such taxing power to the state of domicile, and that any state which has extended benefits or protection or which can demonstrate "the practical fact of its power" or sovereignty as respects the asset may likewise constitutionally make its exaction. State Tax Commission of Utah v. Aldrich, 316 U.S. 174 (1942)."

386, 391, 37 S. Ct. 152. Phrased somewhat differently, if the effect of a probate decree in Georgia *in personam* was to bar a stranger to the decree from later asserting his rights, such a holding would deny procedural due process." (315 U.S. at 353, 86 L. Ed. at 893, 62 S. Ct. at 614.)

There, as here, the decedent's personal representative in the second state was not a party to the will contest in the first state. In rejecting the contention that the New York administrator c.t.a. (the personal representative in the second state) was nevertheless bound *in personam* by the Georgia judgment the court said:

> "We find nothing in either of these cases [*Tant* v. *Wigfall,* 65 Ga. 412 and *Wash* v. *Dickson,* 147 Ga. 540, 94 S. E. 1009], however, which would lead to the conclusion that in Georgia, the New York administrator c.t.a. was in privity, *so far as the sequestration of assets for the payment of death taxes or indebtedness of decedent or her estate is concerned,* with any parties before the Georgia court, or that the New York representative could not take steps in Georgia courts which might result in its getting possession of any assets which under the Georgia law of administration would be properly deliverable to a foreign domiciliary administrator." (Emphasis added.) (315 U.S. at 352, 86 L. Ed. at 893, 62 S. Ct. at 613.)

And further:

> "It seems quite obvious that the [New York] administrator c.t.a. appears in Delaware [where it sought to have decedent's stock in a Delaware corporation transferred to it] as an agency of State of New York, and not as the *alter ego* of the beneficiaries of the Hungerford estate. In its answer to the petitioners' statement of claim it established its status by alleging that not merely the beneficiaries but creditors residing in New York and the State of New York were interested in the estate. . . ." (315 U.S. at 354, 86 L. Ed. at 894, 62 S. Ct. at 615.)

Since the Bank, as the personal representative charged with the administration of decedent's estate, represents interests

which are affected by decedent's domicile and which were not before the court in Florida (e.g., the taxing interests of the State of Indiana and, possibly, the interests of Indiana creditors) the Florida judgment as to domicile is not binding on it. The Indiana trial court was therefore required to make its own finding on that issue. The evidence it heard was substantially the same as that heard by the Florida court but its finding is quite the opposite. As Mr. Justice Stone said for a unanimous court in *Worcester County Trust Co.* v. *Riley* (1937), 302 U.S. 292, 299, 82 L. Ed. 268, 275, 58 S. Ct. 185, 188, (speaking of the right of California and Massachusetts to decide, each for itself, the domicile of the decedent) :

> ". . . conflicting decisions upon the same issue of fact do not necessarily connote erroneous judicial action. Differences in proof and the latitude necessarily allowed to the trier of fact in each case to weigh and draw inferences from evidence and to pass upon the credibility of witnesses, might lead an appellate court to conclude that in none is the judgment erroneous."

Here there well may be no differences in proof, no question of credibility, and no conflict in the evidence, but there is, nevertheless, "latitude necessarily allowed to the trier of fact in each case to . . . draw inferences from [the same] evidence".

We have very carefully reviewed the evidence before the trial court on the question of domicile and find that there is little contradiction, if any, by one witness of facts stated by another witness. It may therefore be said that there is no conflict in the evidentiary facts, but there is much conflict in the ultimate inference to which various bits of that evidence point. For example, testator maintained his voter registration in Indiana but registered his automobile at his Florida address. He owned (jointly with Donald Baum of Warsaw, a beneficiary of both his wills) the mobile home

in which he lived while in Florida. It was located on space for which he paid rent the year around. He paid rent on the apartment where he stayed in Warsaw only when he was there, but it was always available to him and was never occupied by anyone else. His letters at times referred to each place as home. While these conflicting inferences would support a finding that at the time he died testator has two residences, one in Florida and one in Indiana, it is not logical to say that the evidence which supports the establishment of a Florida residence leads inescapably to the conclusion that domicile in Indiana had been thereby abandoned.[6] We therefore cannot say that it was clearly erroneous for the Indiana trial court to find that testator was domiciled in Indiana.[7]

## IV.

After the court found that testator was domiciled in Indiana, the parties agreed to submit to the court for trial without jury the question of whether the manner of execution of the Florida will complied with law. Again the stipulated evidence was affidavits, depositions, and other writings, substantially the same as that before the court on the domicile issue, including the Florida final judgment which confirmed the earlier Florida order of October 22, 1970, which had found that the Florida will had been executed in substantial compliance with Florida statutory requirements and adjudged its execution to be due and proper.

The trial court's findings of fact and conclusions of law which followed the trial of that issue include the finding that the Florida court had

---

6. " 'A man may be a resident of a particular locality without having a domicil there. He can have but one domicil at one and the same time, at least for the same purpose, although he may have several residences.' " *Hayward* v. *Hayward* (1917), 65 Ind. App. 440, 449, 115 N.E. 966, 969, quoting *Long* v. *Ryan* (1878), 30 Gratt. (Va.) 718. See also *Croop* v. *Walton* (1927), 199 Ind. 262, 157 N.E. 275, 53 A.L.R. 1386; *State* v. *Rogers* (1948), 226 Ind. 32, 35, 77 N.E. 2d 594.

7. TR. 52(A) states, *inter alia*, that "the court on appeal shall not set aside the findings or judgment unless clearly erroneous."

"determined on the basis of findings of fact and conclusions of law made by it, that the manner of execution of the Florida Will complied with law. An appeal is presently pending from such determination. The First National Bank of Warsaw was not a party or in privity with any party to the Florida Will contest proceedings."

The trial court's third, fourth, and fifth conclusions of law are that:

"3. The findings of fact, conclusions of law and order or judgment of the County Judge's Court in and for Manatee County, Florida, that the Florida Will was validly executed are not binding on this Court and do not oust this Court from jurisdiction to determine the issues of this Will contest action, including the issue of whether the manner of execution of the Florida Will complied with law.

"4. The Florida Will was not validly executed under either Indiana or Florida law.

"5. The Florida Will being invalid, it does not revoke the Indiana Will of William Nye."

Plaintiff contends the Florida determination that the manner of execution complied with Florida law is conclusive and should have been followed in Indiana. The Trustees, who were the plaintiffs in the Florida litigation, contend that they are not bound by the Florida judgment because three requisites of *res judicata* are not present: (1) identity of causes or issues, (2) mutuality of estoppel and (3) finality of the judgment. The Bank adopts the Trustees' contentions and separately contends that the Florida judgment is not binding on it because it was neither a party, nor the privy of a party, to the Florida contest. No one contends, however, that if the Florida will was, in fact, executed in conformity with the law of Florida that it would not be valid in Indiana. Indeed such a contention would not withstand IC 1971, 29-1-5-5, which reads:

"29-1-5-5 [6-505]. When a will legally executed.—A will is legally executed if the manner of its execution complies

with the law, in force either at the time of execution or at the time of the testator's death, of

(1)  This state, or

(2)  The place of execution, or

(3)  The domicile of the testator at the time of execution or at the time of his death. [Acts 1953, ch. 112, § 505, p. 295.]"

Whether Florida statutes contain a similar provision[8] is immaterial since the will was executed in Florida by one held by the Florida court to be domiciled in Florida, so only Florida law could apply. The result is that in Indiana the question of due execution includes both the Florida issue of whether execution complied with Florida law and the additional Indiana issue of whether execution complied with Indiana law. The addition of an issue to the Indiana case is reason enough for holding that the causes of action in the two states are not identical. We shall, therefore, give no further consideration to the question of identity of causes of action and proceed to determine whether the doctrine of collateral estoppel renders erroneous the trial court's determination of the issue of due execution.[9]

---

8.  Our research indicates no such provision in Florida law.

9.  "Within the doctrine of res judicata, it is of vital importance to observe the distinction between the effect of a judgment upon the cause of action on which the judgment is based and its effect upon a subsequent controversy between the parties based upon a different cause of action. A judgment has the effect of putting an end to the cause of action which was the basis of the proceeding in which the judgment is given. . . .

"Very different is the effect of a judgment upon a subsequent controversy between the parties based upon a different cause of action but involving the same or some of the same questions which were involved in the original action. Here the judgment is conclusive between the parties only as to matters actually litigated and determined in the prior action; it is not conclusive as to matters which might have been but were not actually litigated and determined. The cause of action involved in the second proceeding is not extinguished by the judgment in the prior proceeding by way of bar or merger. But matters actually litigated and determined in the prior action cannot be relitigated in the later action. As to such matters, we have said there is a *collateral estoppel*. The estoppel does not rise from representations made by one of the parties upon which the other party has

Because there is this additional issue in Indiana the appellees contend there is no mutuality of estoppel. Appellees' reasoning is that a Florida judgment invalidating the Florida will under Florida law would not have prevented the proponents of that will from litigating in Indiana its validity under Indiana law. What they fail to state, however, is that it would have estopped them from relitigating in Indiana the issue of whether execution complied with Florida law. And since collateral estoppel precludes relitigation of issues, not causes of action, it is beside the point that all issues in the second cause of action are not barred.[10]

Appellees contend that no issue in the case at bar is identical to any issue in the Florida contest because the burden of proof has shifted. In Florida the burden of proof was on the Trustees to overcome the *prima facie* proof of formal execution and attestation which the proponents were required to make[11], while in Indiana the Trustees bear no burden at

---

relied, as in the case of the ordinary estoppel *in pais*. But a party who has once fought out a question in litigation with the other party is precluded from fighting it out again. The term 'collateral' estoppel is intended to emphasize the fact that the causes of action involved in the two proceedings are different, even though the issues or some of them are the same."—Scott, *Collateral Estoppel by Judgment*, 56 HARV. L.R. 1, 2 (1942).

A similar statement of the distinction between the two branches of the doctrine of *res judicata* is to be found in *Town of Flora* v. *Indiana Service Corporation* (1944), 222 Ind. 253, 256, 53 N.E.2d 161, 163, in which the first branch is called "estoppel by judgment" and the second "estoppel by verdict or finding".

10. An authority who has written many articles on *res judicata* uses the more descriptive term "issue preclusion" in place of "collateral estoppel". The other branch of *res judicata* he calls "claim preclusion". Vestal, *Rational of Preclusion*, 9 ST. LOUIS U.L.J. 29 (1964).

11. The Florida rule is:

"In all proceedings contesting the validity of a purported will, whether before or after such will is admitted to probate, the burden of proof, in the first instance, shall be upon the proponent thereof to establish, prima facie, the formal execution and attestation thereof, whereupon the burden of proof shall shift to the contestant to establish the facts constituting the grounds upon which the probate of such purported will is opposed or revocation thereof is sought." Fla. Stat. Ann. § 732.31.

all. Here the proponents of the Florida will are contesting the validity of the Indiana will on the ground that it was revoked by the Florida will, therefore, the burden of proving the validity of the Florida will is on them.[12]

Our research suggests that the point raised by appellees has gone entirely unnoticed by the writers of textbooks, encyclopedias, law journals and restatements of the law and has been mentioned in but two reported cases.[13]

However, in Vestal, *Preclusion/Res Judicata Variables: Criminal Prosecutions*, 19 VANDERBILT L. R. 683, 701, the author discusses a closely related question illustrated by the case of a widow who was acquitted in a criminal prosecution for murdering her husband who thereafter, in a civil suit for the proceeds of his life insurance, was found to have murdered him.[14] The rationale of that result he explains as follows:

> "Although this result seems unduly harsh and illogical at first glance, there is a valid explanation which justifies it. In criminal actions the burden of proof is 'beyond a reasonable doubt,' while in civil actions the burden is proof by 'a preponderance of the evidence.' Therefore, an acquittal in the former action serves to show only that the government did not prove beyond a reasonable doubt that the defendant committed the crime. This does not mean that the more lenient civil burden of preponderance of the evidence could not have been satisfied. Therefore, a party in a subsequent civil action should not be precluded from attempting to prove an issue by a preponderance of evidence merely because the government did not support the burden of proof beyond a reasonable doubt."

12. The Indiana statute, IC 1971, 29-1-7-20, Ind. Ann. Stat. § 7-120 (Burns 1953 Repl.) ; Ind. Acts 1953, Ch. 112, § 720, reads:

"In any suit to resist the probate, or to test the validity of any will after probate, as provided in section 717 [29-1-7-17] of this [Probate] Code, the burden of proof shall be upon the contestor."

13. These cases discussed *infra* at n. 16.

14. *United States* v. *Burns*, 103 F. Supp. 690 (D. Md.) affd., 200 F.2d 106 (4th Cir. 1952).

This is essentially the rationale of the Florida civil cases cited by appellee.[15]

In two New York cases involving successive civil prosecutions for (1) wrongful death and (2) a surviving action for injuries suffered before death, where the burden was on the defendant to prove contributory negligence in the first (wrongful death) and on the plaintiff in the second to prove freedom therefrom, it was held: "The burden of proof differing in the two actions, the first determination manifestly is not res judicata."[16] In a much later New York case there appears to have been a reversal of the burden of proof in the second case, but collateral estoppel was enforced without mention of the burden of proof.[17]

Our almost fruitless search for precedent on this particular point indicates that examples of cases in which the burden

---

15. *Gordon* v. *Gordon* (Fla. 1952), 59 So.2d 40, and *Matthews* v. *Matthews* (Fla. App. 1961), 133 So.2d 91. In each case it was held that the judgment against the plaintiff in the first action did not preclude an attempt to prove the same facts in the second action because the degree of proof required in the first action was greater than the degree of proof required in the second action. This is also the rationale of federal tax fraud cases wherein a criminal acquittal is not an estoppel in a civil penalty action. *Helvering* v. *Mitchell*, (1938), 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed 917. However, a conviction is an estoppel. *Tomlinson* v. *Lefkowitz* (5th Cir. 1964), 334 F.2d 262.

16. *Lappin* v. *National Container Corp.* (1942), 179 Misc. 109, 37 N.Y.S.2d 800, 804, citing *United States Fire Insurance Co.* v. *Adirondack Power & Light Corp.* (1923), 206 App. Div. 584, 201 N.Y.S. 643. In both of these cases there was another reason which prohibited estoppel: The plaintiff administrator represented different interests in the two cases: The dependents in one and the decedent's estate in the other. See A.L.I. RESTATEMENT, JUDGMENTS § 80(3).

17. *Telaro* v. *Telaro* (1967), 25 N.Y.2d 433, 255 N.E.2d 158. In the first action the wife sued for separate maintenance. The defendant husband counterclaimed to have a brokerage account in both their names declared his. The trial judge in that case found that he had "utterly failed to meet that burden [of proof]" and dismissed his counterclaim on the merits. In the second action in which the wife sued for one half of funds withdrawn by the husband, New York's highest court said: "The judgment in the prior matrimonial action conclusively establishes that the wife had a co-ownership in the account".

*Towson* v. *Towson* (1920), 126 Va. 640, 102 S.E. 48, is also a second action between husband and wife (the first being in the District of Columbia) in which the wife's failure to prove the husband's cruelty in the first estopped her in the second on the issue of justification for deserting her husband.

of proof rests on the other party in the second litigation are extremely rare. Not as rare, but nevertheless uncommon, is the type of case we have here: A case in which the contest of a will takes the form of a contest of a prior will. We suspect that the relative novelty of such cases is responsible for an apparent oversight on the part of the Probate Study Commission's staff and members who drafted our 1953 Probate Code. Had they had such cases in mind when they drafted section 720 of the code[18] they may well have put the burden of proof on the contestors of the will in *every* case, just as their comment indicates they believed they were doing.[19]

Here we have a probated will (the Indiana will) the initial validity of which is conceded. The parties are in agreement that if the unprobated second will is valid, the probated (first) will is revoked, but if the second will is invalid the probated will remains decedent's last will. Thus the will actually being contested here in Indiana is the Florida will. Nevertheless the form of the action is a contest of the Indiana will. That comes about, however, only because the Indiana will was probated first. Had the Florida will been first probated, form and reality would have coincided; the contestors would be the same in form as in substance: The proponents of the Indiana will would be contesting the Florida will and the burden of proof would be on them in Indiana as it was in Florida.

---

18. Ind. Acts 1953, Ch. 112, § 720; IC 1971, 29-1-7-20; Ind. Ann. Stat. § 7-120 (Burns 1953 Repl.).

19. The comment reads

"This section is new and completely changes the present law. Under this section the contestor has the burden of proving his case whether the action is before or after probate." (See note following 29-1-7-20, Ind. Ann. Stat. [Burns Code Ed., 1973].)

The burden of proof would rest on the same shoulders in every contest, regardless of which will is first probated, in those few states which have adopted the Uniform Probate Code approved by the National Conference of Commissioners on Uniform State Laws in August 1969. See 8 UNIFORM LAWS ANNOTATED (West Pub. Co., 1972) 281, 406-414.

That the burden of proof happens, in this case, to fall on the proponents of the will really being contested is a procedural anomaly which effectuates no public policy of the state. On the contrary it appears to frustrate the objective implicit in the commission's comment. And to hold that because of this anomalous circumstance the issue litigated in Florida is not identical to the issue here would be further to frustrate a long established and well recognized public policy of this state "that a matter once litigated is forever litigated."[20] Nor can it be demonstrated that because the Trustees carried the burden of proof in the Florida litigation, it is unfair for us to give effect to that policy by holding that the issue there "adjudged, must be deemed conclusively established in all future actions between the parties" to that litigation.[21]

The Florida judgment was still pending on appeal at the time the Trustees filed their appellee's brief in this court on February 18, 1972, but by the time appellant filed her reply brief she was able to include therein a copy of a *per curiam* affirmance (without opinion) by the District Court of Appeal of Florida, Second District. Prior to oral argument appellant filed with the clerk of the court a copy of a denial of certiorari by the Supreme Court of Florida.

---

20. *Citizens Loan & Trust Co.* v. *Sanders* (1933), 99 Ind. App. 77, 82, 187 N.E. 396.
*Fischli* v. *Fischli* (1825), 1 Blkf. 360, 361 (a case in which the court refused to consider the merits of a suit by a wife divorced in Kentucky for additional alimony in Indiana on the basis of the husband's Indiana land) said:
> "For whenever a matter is adjudicated, and finally determined, by a competent tribunal, it is considered forever at rest. This is a principle upon which the repose of society materially depends; and it therefore prevails, with few exceptions throughout the civilized world."

21. *Bereolos* v. *Roth* (1924), 195 Ind. 425, 428, 145 N.E. 545, said:
> "When a fact has once been in issue in an action between the parties whose rights it would affect, and has been decided by a final judgment of a court having jurisdiction, the decision is binding upon such parties, and the existence or non-existence of the fact, as so adjudged, must be deemed conclusively established in all future actions between them."

The Trustees have made no attempt to object to the manner in which these Florida Court of Appeal and Supreme Court decisions were brought to our attention nor have they challenged the appellant's implied suggestion that we may now treat the Florida judgment as final. Consequently we accept it as final, regardless of what may have been its status pending appeal.[22]

There is no reason, so far as the Trustees are concerned, that the Florida judgment should not be deemed to have conclusively established that the Florida will was duly executed in conformity with Florida law. And on that issue, as distinguished from the issue of domicile, the Bank's position is no better than that of the Trustees. The Bank has standing to litigate the validity of the Florida will *only* because, as executor, it represents the interests of those who will benefit if the Florida will is held invalid. No one will benefit by an invalidation of the Florida will except those whose interests were represented by the Trustees in the Florida contest. Therefore, as to issues which relate only to the validity or invalidity of the Florida will *Riley* v. *New York Trust Company* (1942), 315 U.S. 343, 86 L. Ed. 885, 62 S. Ct. 608, has no application. In the language of *Riley,* the Bank (on all issues other than domicile) is the *alter ego* of the Trustees (and those whose interests the Trustees also represent).

That the Bank, as executor of the Indiana will, has no independent interest in defending the Indiana will is illustrated initially by the legal reason it was not a party to the Florida

---

22. An Indiana judgment is clearly final pending appeal. *Nill* v. *Comparet* (1861), 16 Ind. 107, 109, 79 Am. Dec. 411; *City of Indianapolis* v. *Pollard* (1960), 240 Ind. 507, 510, 166 N.E.2d 648.

We believe that is also the law of Florida, the Federal cases cited by the Trustees notwithstanding. (*Tampa Waterworks Co.* v. *City of Tampa* [C.C.S.C. Fla. 1903], 124 F. 932; *In re Beach Resort Hotel* [S.D. Fla. 1956], 141 F. Supp. 537.) *Reese* v. *Damato* (1902), 44 Fla. 692, 33 So. 462, 464, cites *Nill* v. *Comparet, supra,* and holds that an appeal or "writ of error [except to a court which tries the case de novo], either with or without a supersedeas, does not have the effect of suspending or annulling the effect of the judgment from which it was taken so as to devest such judgment of its force as an estoppel."

proceedings. It was not a party because, by the law of Florida, the executor of a prior will is not an "interested person", and therefore has no standing as a plaintiff in the contest of a later will.[23]

On that point there is no reported Indiana case, but in *Harris* v. *Harris* (1878), 61 Ind. 117, 128, it was held that an administrator of a decedent's estate had no "cause of action . . . either in his own right or in his representative character" to join with heirs to a decedent in a complaint to set aside a Kentucky will which had been admitted to record in Owen County, Indiana, as the true last will of decedent.[24] The executor of a prior will would appear to occupy no different position (with respect to having or not having an interest of his own) nor does any statute purport to confer on him any right to become a plaintiff in any will contest as the representative of any other person's interest. It is only when the contest of a later inconsistent will takes the form it does here (i.e., the form but not the substance of a contest of the will of which he is executor) that an executor can ever exercise a right to contest the validity of another pretended will of his testator.[25] And he has that right, or standing, as a necessary party only because the will contest statute ex-

---

23. *In re Barret's Estate* (Fla. 1949), 40 S.2d 125, 127, so holds and also states:

"The decided weight of authority in other jurisdictions is to like effect. Helfrich v. Yockel, 143 Md. 371, 122 A. 360, 31 A.L.R. 323; Cajoleas v. Attava, 145 Miss. 436, 111 So. 359, 58 A.L.R. 1457; In re O'Brien's Estate, 13 Wash. 2d 581, 126 P.2d 47; Reed v. Home National Bank, 297 Mass. 222, 8 N.E.2d 601, 112 A.L.R. 657."

24. 1 Henry's PROBATE LAW 225, n. 44, erroneously puts the *Harris* case in the category of cases (said to be the "majority rule") which allow an administrator or executor under a valid earlier will to contest a later will.

25. "An executor named in a will generally has no standing to contest the validity of a later will. Gaeta v. De Gise's Will, 139 N.J.Eq. 44, 49 Atl. (2d) 484. If, however, a will has been admitted to probate in Indiana it would seem that the executor could properly oppose the attempted probate of an alleged later revoking will since this is a contest of the first probated will." 1 Henry's PROBATE LAW, 1970 Supp. p. 60, n. 17.

pressly requires that "the executor and all other persons beneficially interested therein shall be made defendants thereto."[26] As the court said in *Hiatt* v. *McColley* (1908), 171 Ind. 91, 96, 85 N.E. 772, the effect of that statute is that the executor is made a party "ex officio" but "he is not within the spirit of [the statute which disqualifies parties as witnesses] since his relation to the subject matter of the suit is fiduciary and not personal, and he has no direct interest in the result, and is free from the inducements and temptations to commit prejury which might be supposed to influence the testimony of parties personally concerned in the estate of the decedent."[27]

The principle that the executor has no independent interest as such in the will which appoints him has been written into Section 502 of the 1953 Probate Code,[28] subsection (d) of which provides:

"(d) No attesting witness is interested unless the will gives to him some personal and beneficial interest. *The fact that a person is named in the will as executor*, trustee, or guardian, or as counsel for the estate, personal representative, trustee or guardian *does not make him an interested person*." (Our emphasis.)

Negatively the executor's want of interest is indicated by his omission from the following definition:

"'Interested persons' means heirs, devisees, spouses, creditors or any others having a property right in or claim against the estate of a decedent being administered. This meaning may vary at different stages and different parts of a proceeding and must be determined according to the particular purpose and matter involved."[29]

26. Ind. Ann. Stat. 29-1-7-17 (Burns Code Ed. 1972).

27. That statute, now IC 1971, 34-1-14-7, Ind. Ann. Stat. § 2-1716 (Burns 1968 Repl.), is the dead man's statute which provides that "[i]n all suits by or against heirs, or devisees . . . neither party shall be a competent witness . . . [to occurrences] prior to the death of the ancestor".

28. Ind. Ann. Stat. 29-1-5-2 (Burns Code Ed., 1972).

29. Ind. Ann. Stat. 29-1-1-3 (Burns Code Ed., 1972).

Further indication that the executor's interest in the will is only representative is found in the wording of the will contest statute itself.[30] If the executor were clearly in the class of "persons beneficially interested" in the will it would be unnecessary expressly to include him as a necessary party defendant.

In an early Alabama case an unsuccessful attempt was made to disqualify legatees and devisees as witnesses in a will contest under a dead man's statute protecting the interest of the decedent's estate. The court noted that in a will contest

> "the controversy is between living parties. The *estate of the testator* is not *interested*. The interests of those claiming to succeed to it, either by operation of law, or by operation of the instrument propounded as a will, are alone involved. The estate remains intact, undiminished, whatever may be the result of the controversy." (Original emphasis.)[31]

The Bank nevertheless argues that in a will contest an executor represents interests other than those of living persons. It contends that it represents the testator and his interest in the execution of his will. However, the Indiana cases which speak of the executor's duty to carry out the testator's wishes do not hold that in performing such duty the executor is representing any legal interest of the testator.[32] Nor can we understand how it would be possible for a person to retain a *legal* interest in the disposition of his worldly possessions after death has taken him from this world. The Court of Appeals of the District of Columbia in holding that an administrator had a representative right to appeal from the probate of a will he thought spurious, recognized that one's legal interests die with him by saying:

---

30. Ind. Ann. Stat. 29-1-7-17 (Burns Code Ed., 1972).

31. *Kumpe* v. *Coons* (1879), 63 Ala. 448, 455.

32. *Schumacher* v. *Adams County Circuit Court* (1947), 225 Ind. 200, 73 N.E.2d 689; *Moore* v. *Livingston* (1970), 148 Ind. App. 275, 265 N.E.2d 251; *Hamilton* v. *Huntington* (1944), 223 Ind. 143, 58 N.E.2d 349, *rehearing denied*, 59 N.E.2d 122.

"It is true that the decedent, being dead, has no interests to protect; but the persons who will receive the property if intestacy is established have interests."[33]

If the Trustees were private individuals to whom the testator had left a testamentary gift in his Indiana will, it would be correct to say that they had represented their own interests in the Florida contest. The precise fact is, however, that the Indiana will's residuary bequest was "to the James Whitcomb Riley Hospital for Children, Indianapolis, Indiana, for the general purposes thereof and to be paid to the agency of the State of Indiana or institution having control or supervision thereof."[34] Riley Hospital is an institution of the State of Indiana, a department of Indiana University, established under statutory authority by the university's board of trustees and under its control.[35] By statute the university trustees are "empowered to receive, accept, hold and apply" such bequests.[36]

The only interest the State of Indiana had in defending the Indiana will against revocation by the Florida will was its interest in receiving the bequest to Riley Hospital. The Trustees represented that interest in Florida and also the

---

33. *Webb* v. *Lohnes* (D.C. Cir. 1938), 96 F.2d 582, 584.

34. The Bank's brief, page 45.

35. "The board of trustees of Indiana University is hereby authorized and directed, to establish, in the city of Indianapolis, a hospital, to be known as the James Whitcomb Riley Hospital for Children. . . ." IC 1971, 20-12-31-1; Ind. Ann. Stat. § 28-6708 (Burns 1970 Repl.).
"This hospital for children shall be a department of Indiana University, and shall be under the direction and control of the trustees of said university. . . ." IC 1971, 20-12-31-2; Ind. Ann. Stat. § 28-6709 (Burns 1970 Repl.).

36. "The board of trustees of Indiana University is hereby authorized and empowered to receive, accept, hold and apply, any donations or bequests of funds or property from individual citizens, societies and organizations which may be tendered in good faith for the purpose of assisting in the construction, extension, equipment and maintenance of the said hospital, to the end that its benefits may be extended to the largest possible number of the afflicted children of the state." IC 1971, 20-12-31-6; Ind. Ann. Stat. § 28-6713 (Burns 1970 Repl.).

interest of the unknown hospital patients who might have benefited from the gift.[37]

The fiduciary powers and duties imposed by statute on the Trustees of Indiana University (with respect to defending bequests to Riley Hospital) would appear to be no different from the powers and duties of the trustees of private testamentary trusts spoken of in *Moll* v. *Goedeke* (1942), 107 Ind. App. 446, 454, 25 N.E.2d 258, 261, in part as follows:

> "Upon probate of the will, unquestionably the title is in the trustees, and the duty is imposed upon them to protect and preserve this interest for whomsoever shall be ultimately entitled to it. They are necessary parties to stand for and represent in the litigation the beneficiaries ultimately entitled to this fund, and such beneficiaries are bound by their representation."

The Trustees of Indiana University were in lawful exercise of their trust powers and duties when they contested in Florida the validity of the Florida will. In so doing they represented the beneficiaries of the Riley Hospital bequest. "[S]uch beneficiaries are bound by their representation."[38] That principle is stated in A.L.I. RESTATEMENT OF THE LAW OF JUDGMENTS § 85 (1) (a) thus:

> "(1) Where a judgment is rendered in an action in which a party thereto properly acts on behalf of another, the other is
> "(a) bound by and entitled to the benefits of the rules of res judicata with reference to such of his interests as at the time are controlled by the party to the action;"

The Restatement carries the principle a step further in subsection (2) of § 85, thus:

---

37. They did not, however, represent the State's interest in a domiciliary administration of testator's Indiana assets, since they do not possess that authority.

38. 107 Ind. App. at 454.

"(2) Where a person is bound by or entitled to the benefits of the rules of res judicata because of a judgment for or against him with reference to a particular subject matter, such rules apply in a subsequent action brought or defended by another on his account."

As the Comment a, which follows, states, in part:

"This Section is based upon the principle that the person whose real interests are involved is bound by and entitled to the benefits of the rules of res judicata. It deals only with situations in which the interests of a beneficiary are involved where these interests are protected successively in two actions in one of which at least his interests are in charge of and are protected by another."

That Comment also states:

"Comment:

*a. Rationale.* The rules stated in this Section are based upon the principles underlying § 80 and the Rationale stated in Comment *b* of that Section is applicable."

Section 80, subsection (4) reads:

"(4) Where a judgment has been rendered for or against a person in an action in which he appears in a representative capacity or is otherwise acting for a particular beneficiary, the rules of res judicata apply in a subsequent action in which his successor is a party."

Comment b following § 80 reads in part:

"*b. Rationale.* This Section is correlative to § 85 by the rules of which a person who is represented by another is bound with respect to the interests held for him by the other in a subsequent action in which either he is a party or some one representing him is a party.

"The rules of res judicata create substantive rights and are not merely procedural. They exist in order to limit a person to one opportunity to settle a dispute between himself and another. Where a representative brings or defends an action, the real dispute is between the beneficiary and the third person: the dispute is not between the representative personally and the third person."

Section 83 of the Restatement and the Comment thereto use the word *privity* to describe the identity of interests which may so connect persons in either their personal or their representative capacities that one not a party to an action may nevertheless be bound by the judgment rendered therein. Section 83 and its Comment a read as follows:

> "A person who is not a party but who is in privity with the parties in an action terminating in a valid judgment is, to the extent stated in §§ 84-92, bound by and entitled to the benefits of the rules of res judicata.
>
> *"Comment:*
>
> "a. Privity is a word which expresses the idea that as to certain matters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if they were parties. The word 'privy' includes those who control an action although not parties to it (see § 84); *those whose interests are represented by a party to the action* (see §§ 85-88); successors in interest to those having derivative claims (§§89-92). There are other persons whose interests may or may not be less directly affected by a judgment because of their relation to one of the parties to the judgment; the effect of a judgment upon such persons is dealt with in Topic 3 (§§ 93-111).
>
> "The statement that a person is bound by or has the benefit of a judgment as a privy is a short method of stating that under the circumstances and for the purpose of the case at hand he is bound by and entitled to the benefits of all or some of the rules of res judicata by way of merger, bar or collateral estoppel. To determine when and to what extent he is bound or has rights, it is necessary to consider his relation to the parties to the action or to the subject matter of the action." (Our emphasis.)

In his concurring opinion in *Bruszewski* v. *United States* (3rd Cir. 1950), 181 F. 2d 419, 423, Judge Goodrich observed:

> "Privity states no reason for including or excluding one from the estoppel of a judgment. It is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata."

The Supreme Court of Oregon has said:

"Whether we use the idea expressed by Judge Goodrich that there must be sufficient proximity between the interests of the two persons to make it fair to estop one with a judgment for or against the other, or use the three-fold idea found in the Restatement [§ 83, comment a, *supra*] there can be no such privity between persons as to produce collateral estoppel unless the result can be defended on principles of fundamental fairness in the due-process sense. A trial in which one party contests his claim against another should be held to estop a third party only when it is realistic to say that the third party was fully protected in the first trial."[39]

In most cases in which a stranger to prior litigation concerning title to property has personally acquired the interest of a party prior to the commencement of the prior action (and perhaps in other cases) it would be manifestly unfair to declare him bound by such judgment adverse to his prior acquired interest. It would not be realistic to say that he was fully protected in the first trial. In such a case the classical definition of privy as "one who, *after the commencement of the action,* has acquired an interest in the subject matter affected by the judgment"[40] serves quite well to protect the stranger against denial of his constitutional right to his day in court. But when the stranger to the prior judgment is a party to the subsequent litigation *only in a representative capacity,* the concern is not whether the representative has had his day in court but whether the person represented has.[41]

Such a case is *Rost* v. *Heyka* (1931), 133 Kan. 292, 299 P. 969, in which "privity" is the word used to link the representative in the second action to the party whose interest was represented in both actions. In that case the heirs of a

---

39. *Wolff* v. *DuPuis* (1963), 233 Ore. 317, 378 P.2d 707, 710.
40. *Tobin* v. *McClellan* (1947), 225 Ind. 335, 344, 73 N.E.2d 679, 683. (Original emphasis.).
41. See Restatement, Judgments, § 85, quoted *ante.*

decedent had litigated a matter between themselves in a partition suit in which the administrator was not a party as administrator (but was a party personally as an heir). The *administrator* then brought an action against the heirs. The court said:

> "It is clear that the issues in the two actions were substantially identical, and the doctrine of res judicata should be applied, unless the fact that plaintiff was not named in his capacity as administrator in the first action prevents it. He was in that case as an heir, and fought it through to a final determination, in which it was held that there was no conspiracy, and that defendants did not owe the estate anything. The estate, it appears, was solvent, and it is not contended that there was not on hand sufficient money to pay any debts or expenses of the deceased. It appears, therefore, that the plaintiff is seeking to recover for his own benefit personal property alleged to have been converted and thereby enlarge his share of the land to be partitioned. The remainder of the estate belongs to the heirs, and, as we have seen, all the heirs were parties in the former action when the questions involved were litigated. In his capacity as administrator, he was a representative of the heirs to whom the estate was to be partitioned, and was in fact in privity with them, and the judgment against him in his capacity as heir is conclusive against him in his capacity as administrator. Donifelser v. Heyl, 7 Kan. App. 606, 52 P. 468, affirmed in 59 Kan. 779, 54 P. 1059." (299 P. at 971.)

In the case at bar it violates no one's rights and denies no one his day in court to say that the relationship between the Trustees of Indiana University and the Bank as executor of the Indiana will is one of privity with respect to the question of which will is testator's valid last will. We, therefore, have no hesitancy in holding that as to all issues relevant only to that question, the Bank is estopped if the Trustees are estopped. And because the trial court found that the Florida court had "determined . . . that the manner of execution of the Florida will complied with [Florida] law," both the

Trustees and the Bank are estopped to relitigate the issue of due execution of the Florida will.

As to the other issues going to the validity of the Florida will, there has been no trial in the court below and no finding. It would be improper for us to assume that the evidence (whether of prior adjudication or otherwise) will be the same on those issues as it has been on the issues that were tried. We cannot, therefore, presume to direct in this opinion the findings which should be made if and when any of the remaining issues are tried.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with the views expressed herein.

Reversed and remanded.

Buchanan, P.J., and Sullivan, J., concur.

NOTE.—Reported at 299 N.E.2d 854.

### ON PETITION FOR REHEARING

WHITE, J.—In their petition for rehearing the Trustees of Indiana University have charged that we have failed to give a statement in writing of a substantial question arising on the record and argued to the court. That substantial question is stated as follows:

"[W]hether the Indiana trial court was correct in concluding that since the testator was an Indiana domiciliary, the Florida decision was limited in effect to the jurisdictional basis of the Florida court, that is, property of the testator within the jurisdiction of the Florida court, and did not affect property of the testator within the jurisdiction of the Indiana court or have binding effect with respect to the issues before the Indiana court to determine the disposition of property subject to its jurisdiction."

To paraphrase language we quoted in our opinion from *Riley* v. *New York Trust Company* (1942), 315 U.S. 343,

353, 86 L. Ed. 885, 893, 62 S. Ct. 608, 614, "So far as the assets in . . . [Florida] are concerned the . . . [Florida] judgment of probate is *in rem*; so far as it affects personalty beyond the state, it is *in personam* and can bind only parties thereto or their privies."

That distinction between the *in rem* and *in personam* effects of the Florida judgment is the cornerstone of our opinion. Our opinion gives the Florida judgment effect as to personalty beyond state of Florida (i.e., in the state of Indiana) only *in personam,* only as to parties to the Florida judgment and their privies. As to the issue of due execution of the Florida will under Florida law all the interested parties or their privies were parties both to the Florida judgment and to the Indiana will contest. Consequently the Florida judgment was binding on the parties to the Indiana contest as to that issue. But the Florida judgment was given no effect in Indiana on the issue of domicile because, as to that issue, the Indiana executor was an interested party but was not a party, or privy to a party, to the Florida judgment.

We believe we did "give a statement in writing of each substantial question arising on the record,"[1] including the question Trustees assert we ignored. Virtually our entire opinion was an answer to that question.

The Trustees have advanced other contentions in their petition for rehearing which were fully discussed in our original opinion and merit no further mention here. The same is true of the petition for rehearing filed by the First National Bank of Warsaw.

Both petitions for rehearing are overruled.

Buchanan, P.J., and Sullivan, J., concur.

NOTE.—Reported at 301 N.E.2d 786.

---

1. Appellate Rule 11 (B) (2) (e).