**Russell W. CARTER, Appellant,**

v.

**ESTATE OF Everett D. DAVIS, Appellee.**

No. 12A02–0401–CV–69.

Court of Appeals of Indiana.

Aug. 26, 2004.

Gregg S. Gordon, William J. Dale, Dale & Eke, P.C., Indianapolis, IN, Attorneys for Appellant.

Richard D. Martin, Martin & Stuard Law Office, Frankfort, IN, Attorney for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Russell Carter appeals the trial court's denial of his motion to dismiss the administration of Everett Davis' estate ("the Estate") for lack of subject matter jurisdiction. We affirm.

### Issue

The sole issue is whether the trial court erred in concluding that it had jurisdiction to administer Davis' estate.

### Facts

Davis was born in Clinton County, Indiana, in 1903. He was married in Clinton County in 1925. His wife predeceased him in 1989, and she is buried in Clinton County, where Davis also had a burial plot. Davis worked in Clinton County his entire career and owned real property there until 1991. Davis also had approximately $155,000 on deposit in checking and savings accounts with Farmers Bank in Clinton County, as well as $175,000 in certificates of deposit with that bank. This does not include assets making up the corpus of a revocable trust Davis established with Farmers Bank in 1989 and which was still

in existence at the time of his death. He executed a will and six codicils in which he asserted he was a resident of Clinton County, with the last codicil being executed in Clinton County on October 3, 2002. These documents were all stored at a safety deposit box at Farmers Bank.

Beginning in the 1970's, Davis began spending part of each year in a warmer climate state, usually Florida. He ordinarily left Indiana in September or October, then returned in May before Memorial Day in order to place flowers on family gravesites. In 1988 Davis acquired a Florida driver's license, which was last renewed in 2001, although it also appears that Davis concurrently maintained an Indiana driver's license. Davis rented an apartment in Clinton County to which he returned annually after selling his Indiana real estate in 1991. He also was registered to vote in Florida and, beginning in 1990, voted in general elections there, although he did not participate in purely local elections. Davis also annually paid a Florida intangible property tax on land that he was possessing under a 99–year lease and on which he maintained a trailer home. He also had almost $120,000 on deposit with a Sarasota, Florida, bank. He also had deposits in financial institutions in New Jersey and Ohio.

Davis died in Florida on June 16, 2003, leaving total assets of nearly $1.2 million. On June 19, 2003, his long-time attorney and Farmers Bank initiated estate proceedings in Clinton County. On September 26, 2003, Carter, a nephew of Davis through marriage, moved to dismiss the estate proceedings in Clinton County for lack of subject matter jurisdiction. The motion contended that Davis was domiciled in Florida at the time of his death and also had no property in Clinton County at that time, and that a Florida court should ad-

minister Davis' estate.[1] At a hearing on the motion, the parties presented conflicting evidence on whether Davis ever intended to return to Indiana when he left for the last time in October 2002. One nephew of Davis', Williams Jenkins, testified that while visiting Davis during the last week of August 2002, Davis said that he was no longer going to rent the apartment he had been renting in Clinton County, but "of course" intended to return "home" to Indiana in May 2003 as he had always done and would rent a furnished apartment in Clinton County instead. Tr. p. 23. Another nephew, Robert Carter (Russell's brother), testified that in October 2002, Davis said he was too old to continue traveling back and forth between Indiana and Florida and intended to live in Florida full-time. On December 29, 2003, the trial court denied Carter's motion to dismiss. He now appeals.

### Analysis

 Carter contends the trial court lacked the necessary subject matter jurisdiction to administer the Estate because Davis possessed no property in Indiana and was not domiciled in Indiana at the time of his death. Indiana Code Section 29–1–7–1(a) provides:

The venue for the probate of a will and for the administration of an estate shall be:

(1) In the county in this state where the decedent had his domicile at the time of his death.

(2) When not domiciled in this state in any county in the state, where he left any property at the time of his decease; or into which county any property belonging to his estate may have come after his decease.

---

**1.** The motion also noted that Indiana has an inheritance tax, while Florida does not.

This court has held that this statute requires domicile of the decedent in Indiana or possession of assets in Indiana before jurisdiction in a general estate proceeding can attach to an Indiana court. *Overpeck v. Dowd,* 173 Ind.App. 610, 619, 364 N.E.2d 1043, 1049 (1977). We concluded that because the decedents in *Overpeck* neither were domiciled in Indiana nor possessed any property in Indiana that the letters of administration issued by an Indiana trial court were "void" due to lack of jurisdiction. *Id.* The Estate on appeal takes issue with Carter construing *Overpeck* as referring to a lack of subject matter jurisdiction, which admittedly was not clearly specified in the opinion. *See Troxel v. Troxel,* 737 N.E.2d 745, 750 (Ind.2000) (noting the *Overpeck* opinion "did not specify whether the probate court lacked subject matter jurisdiction, personal jurisdiction, or jurisdiction over the particular case" but concluding it was "clear that the probate court had neither personal jurisdiction over the [decedents] nor in rem jurisdiction over their estates."). However, we see no indication in the trial court record that the Estate ever challenged Carter's labeling the issue before the court as one concerning subject matter jurisdiction. Instead, it responded to Carter's subject matter jurisdiction claim on the merits. "A party cannot change its theory and on appeal argue an issue that was not properly presented to the trial court." *Carmichael v. Siegel,* 754 N.E.2d 619, 634 (Ind.Ct.App.2001). We leave for another day the question of whether Indiana Code Section 29–1–7–1 concerns subject matter jurisdiction, personal jurisdiction, or jurisdiction over the particular case, because before the trial court the Estate essentially agreed with Carter that it implicated subject matter jurisdiction.

We next observe that the parties do not agree on the proper standard of review to be applied to the trial court's ruling. Carter contends that the evidence presented with respect to jurisdiction was undisputed and, therefore, we should review the ruling de novo. The Estate responds that the parties presented conflicting evidence on the jurisdictional issue and, therefore, we should reverse the ruling only if we find it to be clearly erroneous. In ruling on a motion to dismiss for lack of subject matter jurisdiction under Indiana Trial Rule 12(B)(1), a trial court may consider not only the original pleadings and motion to dismiss but also any affidavits or evidence submitted by the parties. *See GKN Co. v. Magness,* 744 N.E.2d 397, 400 (Ind.2001). "In addition, the trial court may weigh the evidence to determine the existence of the requisite jurisdictional facts." *Id.* On appeal, the standard of review for Trial Rule 12(B)(1) motions to dismiss is dependent upon: (i) whether the trial court resolved disputed facts; and (ii) if the trial court resolved disputed facts, whether it conducted an evidentiary hearing or ruled on a "paper record." *Id.* at 401. If the facts before the trial court are not in dispute, then the question of subject matter jurisdiction is purely one of law and our review is de novo. *Id.* If the facts before the trial court are in dispute and the trial court conducts an evidentiary hearing, "the court typically engages in its classic fact-finding function, often evaluating the character and credibility of witnesses." *Id.* In such a situation, we give the trial court's factual findings and judgment deference and we will reverse only if they are clearly erroneous. *Id.* If the facts are disputed but the trial court rules entirely based upon a paper record, the standard of review on a motion to dismiss for lack of subject matter jurisdiction is again de novo. *Id.*

In this case, it appears to us that two different standards of review are implicated. With respect to the question of

Davis' domicile at the time of his death, we agree with the Estate that resolution of this issue would have required, in part, judging and weighing the credibility of in-court testimony presented by Davis' two nephews as to his intention to return to Indiana in the spring of 2003. Thus, with regard to Davis' domicile, we defer to the trial court's fact-finding ability. However, with respect to whether Davis had any property in Indiana at the time of his death, the parties only presented a "paper record." If the trial court concluded it had jurisdiction because Davis had property in Clinton County at the time of his death, our review of its ruling would be de novo. The trial court, however, issued a general ruling that did not indicate upon which legal theory it based its decision. In such a situation, we examine the record and will affirm the judgment if it can be sustained upon any legal theory supported by the evidence. *See Harrison v. Thomas,* 761 N.E.2d 816, 819 (Ind.2002).

 We first address the question of Davis' domicile at the time of his death. Domicile means "the place where a person has his true, fixed, permanent home and principal establishment, and to which place he has, whenever he is absent, the intention of returning." *State Election Bd. v. Bayh,* 521 N.E.2d 1313, 1317 (Ind.1988) (quoting *Board of Medical Registration and Examination v. Turner,* 241 Ind. 73, 80, 168 N.E.2d 193, 196 (1960)). Domicile can be established in one of three ways: "domicile of origin or birth, domicile by choice, and domicile by operation of law." *Id.* (quoting *Croop v. Walton,* 199 Ind. 262, 271, 157 N.E. 275, 278 (1927)). "A change of domicile requires an actual moving with an intent to go to a given place and remain there." *Id.* "A person who leaves his place of residence temporarily, but with the intention of returning, has not lost his original residence." *Id.* "Intent and conduct must converge to establish a new domicile." *Id.* at 1318.

This is not the first time this court has been asked to consider the legal domicile of a "snowbird" who split his time between Indiana and Florida and eventually died in Florida; we did so in *In re Nye's Estate,* 157 Ind.App. 236, 299 N.E.2d 854 (1973). The facts in that case were strikingly similar to the ones in this case in many ways. In *Nye,* the decedent was born in Kosciusko County, was married there, and worked there until his retirement. *Id.* at 238, 299 N.E.2d at 856. After his wife died when he was in his late sixties, he sold his real property in Indiana and began spending more and more time in Florida, where he lived in a mobile home on property he leased. *Id.* He returned to Indiana each spring and lived in an apartment in Warsaw. *Id.* He also had certificates of deposit totaling over $100,000 in two Kosciusko County banks. *Id.* at 238–39, 299 N.E.2d at 856. In letters, the decedent referred to both Indiana and Florida as home. *Id.* at 247, 299 N.E.2d at 861. He maintained his voter registration in Indiana but registered his vehicle in Florida. *Id.* at 246, 299 N.E.2d at 861. We concluded that although this evidence could support conflicting inferences, "it is not logical to say that the evidence which supports the establishment of a Florida residence leads inescapably to the conclusion that domicile in Indiana had been thereby abanndoned [sic]." *Id.* at 247, 299 N.E.2d at 861. Thus, we affirmed as not clearly erroneous an Indiana trial court's conclusion that the decedent was domiciled in Indiana, even though a Florida court had decided differently. *Id.*

 Here, just like the decedent in *Nye,* Davis was born, raised, married in Indiana and worked here his entire career. He owned real property here until late in his life, not selling that property until he

was eighty-seven years old and after his wife died. He referred to Indiana as "home," telling Jenkins that he would "always com[e] home" to Indiana and that he enjoyed going to his "home" Masonic Lodge in Clinton County instead of the Lodge he sometimes visited in Florida. Tr. p. 22–23. He rented an apartment in Indiana until fall 2002, when he told Jenkins that he would return to rent a furnished apartment in spring 2003. His will and other important documents were kept in a safety deposit box at Farmers Bank; the will also requested that Farmers Bank serve as executor of his estate. The fact that Davis voted in Florida should not necessarily be dispositive evidence that he had changed his domicile to Florida; with elections being in November when he would have already returned to Florida for the winter, it simply would have been more convenient for Davis to vote directly in Florida rather than filing an absentee Indiana vote. Additionally, Davis did not vote in any purely local-level Florida elections. As for Davis' trailer in Florida, it was only logical that he would have a semi-permanent place to live in that state, given the extended time he spent there, and that he would pay tax on that property as required by Florida law. Davis did have a Florida driver's license, but the Estate contends Davis concurrently maintained his Indiana license; also, the Florida department of motor vehicles record for Davis lists his Indiana address as his home address.

Carter points to the testimony of his brother Robert before the trial court as conclusive evidence that as of October 2002, Davis had abandoned any idea that he would ever return to Indiana and that he intended to change his domicile to Florida. However, we believe that the trial court in this instance was entitled to assess the credibility of this testimony and reject it, given that Davis' other nephew testified that at the end of August, Davis was certain he would return to Indiana. When asked by Jenkins whether that was the case, Davis replied, "Well, of course ... I'm always coming home.... I have to be here in May for Memorial Day.... You know that I'm always here for Memorial Day." Tr. p. 23. Additionally, Davis executed the sixth and final codicil to his will on October 3, 2002, in which he asserted that he was a resident of Clinton County, Indiana. This weighs against any testimony purporting to indicate Davis had decided in October 2002 to live full-time in Florida. As for Robert Carter's claim that in the spring of 2003 Davis had indicated he was going to write his Indiana attorney and ask that his will and other documents be sent to Florida, no supporting evidence for this claim was introduced. Finally, the fact that Davis apparently was too ill to return to Indiana in the spring of 2003 should not be conclusive evidence that he in fact intended to abandon Indiana as his domicile. *See In re Estate of Brown*, 587 N.E.2d 686, 690 (Ind.Ct.App.1992) (holding decedent was domiciled in Elkhart County, not Grant County, even though decedent had been in Grant County for eight years before death due to illness and hospitalization).

We conclude that the trial court would have been required to weigh evidence and judge witness credibility in determining whether Davis was domiciled in Indiana at the time of his death. As such, the trial court's ruling denying Carter's motion to dismiss cannot be deemed clearly erroneous because there is disputed evidence on the issue of whether Davis had the requisite intent to change his domicile to Florida. We believe there is sufficient evidence from which the trial court could have found that Davis was still domiciled in Indiana at the time of his death.

■ If, however, the trial court issued its ruling on the basis that Davis had property in Clinton County at the time of his death, the evidence of which was based entirely upon a paper record, we could not say its ruling was erroneous even under a de novo standard of review. The probate code defines "property" as including "both real and personal property." Ind.Code § 29–1–1–3(a)(23). "Personal property" is defined as including "interests in goods, money, choses in action, evidences of debt, and chattels real." I.C. § 29–1–1–3(a)(21).

■ As noted, Davis had several hundred thousand dollars on deposit with Farmers Bank in Clinton County at the time of his death. The general and well-settled rule is that "[m]oney deposited in a checking account in a bank becomes the property of the bank and the bank becomes the debtor of the depositor." *Ogle v. Barker,* 224 Ind. 489, 502, 68 N.E.2d 550, 556 (1946), *overruled on other grounds by Nelson v. Parker,* 687 N.E.2d 187 (Ind.1997); *First Nat'l Bank of Martinsville v. Fletcher Nat'l Bank and Trust Co.,* 480 N.E.2d 964, 965 (Ind.Ct.App. 1985), *trans. denied.* "Indebtedness of the bank to the depositor *is a chose in action.*" *Ogle,* 224 Ind. at 502, 68 N.E.2d at 556 (emphasis added). Under the plain language of the probate code's definition of "personal property" and fundamental principles of banking law as stated in *Ogle,* it is clear that Davis' deposits with Farmers Bank in Clinton County are evidence of debt or choses in action.

Carter notes that under the doctrine of "mobilia sequuntur personam," [2] as recognized in some Indiana cases, "the situs of intangible personal property is the legal domicile of the owner." *Phillips v. Scalf,* 778 N.E.2d 480, 483–84 (Ind.Ct.App.2002).

Therefore, Carter asserts that assuming Davis' legal domicile was in fact in Florida, the legal situs of his interests in all his bank deposits, including those with Farmers Bank, was also in Florida. We disagree.

*Phillips* addressed the question of the situs of a person's property interest in the right of publicity associated with John Dillinger, the person's great-uncle. After describing the right of publicity as an "intangible chattel," we concluded that the situs of this property interest was the Dillinger relative's county of residence for purposes of Indiana Trial Rule 75's venue provisions. *Id.* Here, we are not faced with the question of the situs of a completely ephemeral property interest in a right of publicity that had no physical connection with any geographic location. Instead, there is no question here that Davis deposited large sums of money with a bank located in Clinton County and, therefore, evidence of the bank's indebtedness to Davis is also located in Clinton County and that debt is collectible in Clinton County.

We also observe that our supreme court has addressed the question of where a decedent's personal property in the form of a debt is located for probate administration purposes and did not adhere to the "mobilia sequuntur personam" rule. Specifically, in *Hensley v. Rich,* 191 Ind. 294, 132 N.E. 632 (1921), the court was asked to determine the legal situs of a debt in the form of a promissory note held by the decedent, who died in Tennessee, where the debtor resided in Indiana. The court concluded, "the proposition that a promissory note, even though past due and to be collected by suit at the home of the debtor as part of the assets of the estate, is assets

---

**2.** "Mobilia sequuntur personam" literally means, "Movables follow the person." Black's Law Dictionary 1019 (7th ed.1999).

at the domicile of the intestate, and not where the debtor resides ... *does not appeal to us as being sound." Id.* at 301–02, 132 N.E. at 635 (emphasis added). Clearly, therefore, our supreme court considered that an asset such as a debt or chose in action is located where the debtor is located and/or where the debt may be collected or the action brought, not where the decedent was domiciled at the time of his death. Whatever force the rule of "mobilia sequuntur personam" has in Indiana with respect to some issues, it does not appear to apply to the question of where a decedent's personal property is located for purposes of probate administration. *Hensley* demonstrates that it does not apply in such a situation. Here, Farmers Bank, as Davis' debtor and subject to an action for recovery of the funds on deposit there, was located in Clinton County. Thus, jurisdiction over the administration of Davis' estate also properly rested in Clinton County because he possessed property legally located there at the time of his death.

### Conclusion

The trial court's denial of Carter's motion to dismiss Davis' probate proceedings for lack of subject matter jurisdiction is supported either by evidence that Davis was still domiciled in Clinton County at the time of his death, or that he possessed property located in Clinton County at that time. We affirm.

Affirmed.

NAJAM, J., and SULLIVAN, J., concur.