**JPMORGAN CHASE BANK, N.A., Appellant–Plaintiff,**

v.

**DESERT PALACE, INC., and OPBIZ, LLC, Appellees–Defendants.**

No. 49A02–0707–CV–551.

Court of Appeals of Indiana.

March 19, 2008.

Joseph C. Chapelle, Mark J. Crandley, Barnes & Thornburg LLP, Indianapolis, IN, Attorneys for Appellant.

Wayne C. Turner, Anne L. Cowgur, Bingham McHale LLP, Indianapolis, IN, Attorneys for Appellees, Desert Palace, Inc.

Andrew W. Hull, Jason L. Fulk, Hoover & Hull LLP, Indianapolis, IN, Attorneys for Appellees, Opbiz, LLC.

## OPINION

KIRSCH, Judge.

JPMorgan Chase Bank, N.A. ("Chase") appeals the trial court's dismissal of its action against Desert Palace, Inc. ("Caesar's") and Opbiz, LLC ("Aladdin") (together, the "Casinos") for lack of personal jurisdiction and on grounds of *forum non conveniens*. Chase raises the following restated issues on appeal:

I. Whether the Casinos have sufficient minimum contacts to satisfy due process.

II. Whether Indiana is an inconvenient forum for Chase's action against the Casinos.

We reverse.[1]

## FACTS AND PROCEDURAL HISTORY

This appeal arises from the gambling activities and debts incurred by an Indiana citizen, Gerry Gilliatte ("Gilliatte"), at the Casinos, Caesar's and Aladdin.[2] From

1. On January 16, 2008, we held oral argument in this matter at Purdue University's Krannert Graduate School of Management. We extend many thanks. First, we thank counsel for the quality of the oral and written arguments, participating in post-argument discussions with the audience, and for commuting from Indianapolis and Chicago. We especially thank the Krannert Graduate School of Management for their accommodations and the students in the audience for their thoughtful post-argument questions.

2. Appellees, Desert Palace, Inc. ("Caesar's") and Opbiz, LLC ("Aladdin") (together, the

2001 to 2006, Gilliatte played high-stakes games at the Casinos in Las Vegas, Nevada. During the course of Gilliatte's gambling, he gave certain markers to the Casinos The markers were effectively blank checks and were secured by Gilliatte's personal bank accounts in Indiana and those of his former construction company, Gilliatte General Contractors ("GGC"). The GGC account was with Chase Bank. Gilliatte went to the Casinos at least once a year and accumulated hundreds of thousands of dollars in debt to the Casinos. Also during that time, the Casinos sent Gilliatte numerous marketing materials and offered various complimentary services to influence his speedy return, while at the same time asking for Gilliatte to repay his debt.

Caesar's, through its employee, made contact in Indiana with Gilliatte, several members of his family, and GGC to seek payment. Gilliatte's family usually placed Caesar's in touch with Gilliatte but also informed Caesar's that it would need to contact Gilliatte's attorney, Greg Easter. Similarly, Aladdin, through its employees, also made contact in Indiana with GGC in order to collect the debt. GGC referred Aladdin to Easter, who told Aladdin that Gilliatte no longer owned any interest in GGC. In late 2005, Gilliatte sent Caesar's a personal check to satisfy some of his outstanding balance, but the check bounced. In early 2006, Caesar's contacted Gilliatte via email and threatened criminal prosecution if he did not pay. Easter notified Caesar's that Gilliatte was ill and that Easter maintained a Power of Attorney to pay all of Gilliatte's outstanding debts.

In 2006, Gilliatte passed away. After further failed attempts to recoup the debt, the Casinos presented the markers secured by GGC's Chase business account for payment. Chase withdrew the funds necessary to satisfy the markers from GGC's accounts and remitted payment to the Casinos. When GGC noticed the withdrawals, they notified Chase that they were unauthorized. Chase then refunded the money to GGC and brought this suit against the Casinos alleging that each had engaged in fraudulent misrepresentation or negligently converted its money. *Appellant's App.* at 11–20. The Casinos moved to dismiss for lack of personal jurisdiction and on grounds of *forum non conveniens.* Without making any specific findings or conclusions, the trial court granted the motion, stating that personal jurisdiction did not exist, and even if it did, Indiana is an inconvenient forum. Chase now appeals.

## DISCUSSION AND DECISION

### I. Personal Jurisdiction

 Courts of appeal review the issue of personal jurisdiction on a case-by-case basis de novo. *LinkAmerica Corp. v. Albert,* 857 N.E.2d 961, 966 (Ind.2006); *Am. Econ. Ins. Co. v. Felts,* 759 N.E.2d 649, 653 (Ind.Ct.App.2001). However, to the extent that the trial court found facts to support jurisdiction, those facts will be reviewed for clear error. *LinkAmerica,* 857 N.E.2d at 966. Where the trial court did not find jurisdictional facts, we may accept the plaintiff's well-pleaded facts to the extent they are not challenged, and we may view challenged facts in favor of the plaintiff.[3] *Anthem Ins. Cos., Inc. v. Tenet*

"Casinos"), filed individual briefs in this matter. Therefore, we will refer to each individually and sometimes together. We will identify the party (Caesar's or Aladdin) when we ref-

erence their briefs or appendices, e.g., *Caesar's Br.*

3. Under Indiana law, the trial court shall find those facts necessary to determine jurisdic-

*Healthcare Corp.*, 730 N.E.2d 1227, 1238, *superceded by statute* (see below).

▌ The party challenging personal jurisdiction has the burden of establishing the lack thereof by a preponderance of the evidence. *Sohacki v. Amateur Hockey Ass'n of Ill.*, 739 N.E.2d 185, 188 (Ind.Ct. App.2000). We presume jurisdiction exists until the defendant comes forth with evidence sufficient to challenge jurisdiction. *Id.*

▌ Personal jurisdiction is the "court's power to bring an individual to its

tion. *LinkAmerica v. Albert*, 857 N.E.2d 961, 962 (Ind.2006). However, Indiana courts have not spoken to what a reviewing court does when the trial court does not make any jurisdictional fact-findings. Courts in other jurisdictions accept all of the allegations in the plaintiff's complaint so long as they are not challenged and view all challenged facts in favor of the plaintiff. *See Telcordia Tech, Inc. v. Telkom SA, Ltd.*, 458 F.3d 172, 176–77 (3rd. Cir.2006) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3rd. Cir.2002)) (quoting *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142, n. 1 (3rd. Cir.1992)). We find this standard persuasive and proceed accordingly.

4. The *LinkAmerica* Court held that the 2003 statutory amendments converted Indiana's long-arm statute into a personal jurisdiction checklist and not a test. *LinkAmerica*, 857 N.E.2d at 967. Indiana's long-arm statute, Indiana Trial Rule 4.4(A), states:

Any person or organization that is a nonresident of this state, a resident of this state who has left the state, or a person whose residence is unknown, submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or her or his or her agent:
 (1) doing any business in this state;
 (2) causing personal injury or property damage by an act or omission done within the state;
 (3) causing personal injury or property damage in this state by an occurrence, act or omission done outside of this state if he regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue or ben-

adjudicative process" and to enforce a judgment against them. *Felts*, 759 N.E.2d at 653 (quoting *Black's Law Dictionary* 857 (7th ed.1999)). A court must determine whether the exercise of personal jurisdiction comports with the Federal Due Process Clause.[4] *LinkAmerica*, 857 N.E.2d at 967.

▌ Under the Due Process Clause of the Fourteenth Amendment, a state is required to demonstrate that a party has sufficient "minimum contacts" such that

efit from goods, materials, or services used, consumed, or rendered in this state;
 (4) having supplied or contracted to supply services rendered or to be rendered or goods or materials furnished or to be furnished in this state;
 (5) owning, using, or possessing any real property or an interest in real property within this state;
 (6) contracting to insure or act as a surety for or on behalf of any person, property or risk located within this state at the time the contract was made;
 (7) living in the marital relationship within the state notwithstanding subsequent departure from the state, as to all obligations for alimony, custody, child support, or property settlement, if the other party to the marital relationship continues to reside in the state; or
 (8) abusing, harassing, or disturbing the peace of, or violating a protective or restraining order for the protection of, any person within the state by an act or omission done in this state, or outside this state if the act or omission is part of a continuing course of conduct having an effect in this state.
 In addition, a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or the United States.
Prior to the amendment, our Supreme Court noted that analyzing whether the defendant's conduct is consistent with due process, " 'has the effect of ignoring [the checklist in] T.R. 4.4(A).' " *Keesling v. Winstead*, 858 N.E.2d 996, 1001 (Ind.Ct.App.2006) (quoting *Anthem Ins. Cos., Inc. v. Tenet etc.*, 730 N.E.2d 1227, 1232 (Ind.2000), *superceded by statute*).

the court's exercise of personal jurisdiction does not offend " 'traditional notions of fair play and substantial justice.' " *Id.* (quoting *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

▮ Personal jurisdiction may be established in one of two ways. First, "if the defendant's contacts with the state are so 'continuous and systematic' that the defendant should reasonably anticipate being haled into the courts of that state for any matter, then the defendant is subject to general jurisdiction...." *LinkAmerica,* 857 N.E.2d at 967 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415 n. 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). General jurisdiction extends to even those claims unrelated to the defendant's contact with the forum state. *Id.*

▮ Second, if the defendant's contacts are not "continuous and systematic," a defendant's particular contact with the forum state may subject it to that state's specific jurisdiction. *Id.* at 968. Specific jurisdiction is based on whether a "defendant purposefully availed itself of the privilege of conducting activities within the forum state so that the defendant reasonably anticipates being haled into court there." *Id.* (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). A defendant's single act may be sufficient to satisfy specific jurisdiction, so long as the defendant's conduct with the forum state creates a "substantial connection" with the forum state, and the suit is based on the defendant's act. *Id.* (citing *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)). A "substantial connection" does not arise from a defendant's "random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person." *Id.* (citing *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174).

▮ ▪ The final due process step requires that, if the defendant has sufficient contacts or a substantial connection with the forum state to establish general or specific jurisdiction, the state's exercise of jurisdiction must be reasonable. *Id.* (citing *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174). There are five factors to consider when determining the reasonableness of jurisdiction:

(1) the burden on the defendant;

(2) the forum State's interest in adjudicating the dispute;

(3) the plaintiff's interest in obtaining convenient and effective relief;

(4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and

(5) the shared interest of the several States in furthering fundamental substantive social policies.

*Id.* (quoting *Burger King,* 471 U.S. at 476–77, 105 S.Ct. 2174); *see also World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Due process requires that a defendant have adequate notice of a suit before it is subject to the state's jurisdiction. *Volkswagen,* 444 U.S. at 291, 100 S.Ct. 580. "[T]he Due Process Clause means to give 'a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.' " *Id.* at 297, 100 S.Ct. 580.

▮ Because we hold that Indiana has specific jurisdiction, we do not reach the issue whether it has general jurisdiction. When the defendant's action gives rise to the plaintiff's claim, the issue is whether specific jurisdiction exists. *See LinkAmerica,* 857 N.E.2d at 967 ("[S]pecific jurisdiction may be asserted if the controversy is related to or arises out of the defen-

dant's contacts with the forum state."). Chase claims that the Casinos committed an intentional tort, i.e., cashing a marker[5] each knew was secured by an unauthorized account, that caused injury here, and coupled with its other acts (even those unrelated to Chase's claim) were sufficient to establish jurisdiction.

In *Calder v. Jones,* 465 U.S. 783, 789, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), the United States Supreme Court addressed the issue of specific jurisdiction. In *Calder,* the plaintiff, a known entertainer, sued the defendant, a national magazine, in California for libel published in Florida and circulated in California. *Id.* at 785, 104 S.Ct. 1482. Prior to publishing the allegedly libelous article, the defendant's reporter lived in Florida, did the majority of his research in Florida, made phone calls and wrote letters from Florida to California, and occasionally flew to California on business. *Id.* at 785–86, 104 S.Ct. 1482. The named defendant, Calder, was the president and editor of the magazine and had been to California once prior to the publication, for pleasure not business. *Id.* The Court agreed with the California Court of Appeal and its holding that defendant's contacts were insufficient to establish jurisdiction, but that specific jurisdiction exists when the action arises out of the defendant's "intentional conduct" allegedly calculated to cause injury in the

forum state. *Calder,* 465 U.S. at 791, 104 S.Ct. 1482. Where the forum is the focal point of the conduct and the injury, jurisdiction is proper. *Id.* at 790, 104 S.Ct. 1482 (citing *Volkswagen,* 444 U.S at 297–98, 100 S.Ct. 559; and Restatement (Second) of Conflicts of Law § 37) (known as the "effects" test).

Indiana cases have applied *Calder* and held that a defendant's purposeful conduct may subject it to Indiana's jurisdiction. For example, in *Brockman v. Kravic,* 779 N.E.2d 1250 (Ind.Ct.App.2002), we held that a psychologist who did not practice and was not licensed in Indiana but sent allegedly defamatory letters regarding his treatment of an Indiana citizen into Indiana that affected the rights of others was subject to Indiana's personal jurisdiction. Similarly, in *Mart v. Hess,* 703 N.E.2d 190, 193 (Ind.Ct.App.1998), defendant-wife sent disparaging, libelous, and defamatory letters about the plaintiff-husband from her home in Hawaii to individuals in Indiana. We found that when the claim arises out of the defendant's conduct, "less is required to support jurisdiction," and defendant-wife's acts were sufficient. *Id.*

Even more factually similar to the case before us, at least three Indiana cases have found specific jurisdiction where the

---

**5.** This court, in *Schrenger v. Caesar's Indiana,* 825 N.E.2d 879 (Ind.Ct.App.2005), *trans. denied,* provided a thorough explanation of the enforcement of gambling debts in Indiana and the extension of a casino's credit to its patrons, e.g. casino's markers. The issue regarded the statutory interpretation of IC 34–16–1–1 against the conflicting language in IC 4–33–9–15. IC 34–16–1–1 provides, "A note, bill, bond, conveyance, contract, mortgage, or other security made in consideration of: (1) money or other property won as a result of a wager; or (2) the repayment of money lent at the time of a wager for the purposes of being wagered; is void." *Schrenger,* 825 N.E.2d at

882 (citing IC 34–16–1–1). IC 4–33–9–15 provides that "all tokens, chips, or electronic cards that are used to make wagers" and are purchased from the casino operator are valid and "may be purchased by means of an agreement under which the owner or operating agent extends credit to the patron." *Id.* (citing IC 4–33–9–15). We recognized the conflicting language between the statutes and that neither referred to each other, but held that IC 4–33–9–15 provided a riverboat exception to the restrictions set forth in IC 34–16–1–1. *Id.* at 883.; *see also Id.* at 882 (citing 71 Am.Jur. Proof of Facts 3d *Enforcement of Casino Gambling Debts* § 2 (2003)).

defendant sent fraudulent checks or other financial documents into Indiana: *In re Estate of Baker*, 837 N.E.2d 603 (Ind.Ct. App.2005); *Saler v. Irick*, 800 N.E.2d 960 (Ind.Ct.App.2003); *Lee v. Goshen Rubber Co.*, 635 N.E.2d 214 (Ind.Ct.App.1994). In *Baker*, the Georgia defendant submitted checks to an Indiana probate court for payment from an Indiana account without authorization. 837 N.E.2d at 612. In *Saler*, the out-of-state defendants (residents of Illinois, Maryland, and Virginia) sent authorizations in a scheme to double collect payable-on-death benefits. 800 N.E.2d at 969–70. And, in *Lee*, the North Carolina defendant submitted fraudulent expense vouchers to his Indiana employer. 635 N.E.2d at 215–16. In each case, this court held that the act created a substantial connection with the forum sufficient to establish personal jurisdiction.

Here, the Casinos' contacts with Indiana include their promotional and debt collection efforts targeting tens of thousands of Indiana citizens, and their phone calls, emails, and letters to Gilliatte, his family, and his attorney.[6] The Casinos also cashed markers drawn on GGC's account. Normally, cashing a check that was secured by a forum account alone is insufficient for jurisdiction. *See Helicopteros*, 466 U.S. at 416, 104 S.Ct. 1868. Here, however, Chase alleges that the Casinos committed fraud, misrepresentation, and conversion when it cashed the marker. *Appellant's App.* at 5–6. Chase claims that the Casinos knew that Gilliatte was neither a holder nor an agent of GGC and that their conduct in presenting the markers was tortious. The trial court did not make any findings of fact that conflict with this allegation. A bank account is located where the depositor resides and where deposits are made. *Carter v. Estate of Davis*, 813 N.E.2d 1209, 1216–17 (Ind.Ct. App.2004). GGC only did business in Indiana and only did business with Chase in Indiana. Included within Chase's subrogated rights, was GGC's right to make a claim based on its injury, which was located in Indiana.

Chase alleges that the Casinos knew that cashing the markers would be fraudulent, and that the Casinos effectively wrote bad checks to satisfy a contractual debt. The Casinos argue that experiencing economic harm is not enough to establish jurisdiction and that there is no *per se* rule that an intentional tort confers personal jurisdiction. They claim a slippery slope may result if personal jurisdiction is established every time a forum plaintiff alleges a tort against a non-forum defendant, regardless of how frivolous the claim may be. *See Wallace v. Herron*, 778 F.2d 391, 395 (7th Cir.1985). Further, the Casinos argue that due process would be strained if

---

**6.** Chase argues that Caesar's two claims in Indiana probate court, which were filed to recover Gilliatte's debt from his estate, effectively waived any objection based on jurisdiction. *See Rollins Burdick Hunter of Utah, Inc. v. Bd. of Tr. of Ball State Univer.*, 665 N.E.2d 914, 919 (Ind.Ct.App.1996) (when party seeks affirmative relief before objecting, they submit to jurisdiction); *see also Gen. Contracting & Trading Co. v. Interpole, Inc.*, 940 F.2d 20, 23–25 (1st Cir.1991) (ruling that if state did not have jurisdiction over defendant in plaintiff's claim, and later defendant was permitted to bring action against plaintiff, it "would produce an unjust asymmetry....."); *Lyman Steel Corp. v. Ferrostaal Metals Corp.*, 747 F.Supp. 389, 396 (N.D.Ind.1990) (voluntarily filing lawsuit in the forum state based on the same set of facts is another indication of purposeful availment). Further, Chase asserts that the Casinos' argument that its action in Indiana related to Gilliatte's estate were ministerial, and therefore, the trial court was free to ignore them, is not true because the claims alleged Gilliatte owed a debt to the Casinos, which under IC 29–1–1–3(2), is the same as filing a lawsuit against the decedent. Because we resolve the jurisdictional issue based on the alleged intentional conduct of the Casinos, we do not address this issue.

we were to permit jurisdiction based on only economic harm. The Casinos assert that the "effects test" described in *Volkswagen* and reinforced in *Calder* ensures that courts do not overzealously confer jurisdiction based on a defendant's limited contacts, and if applied here, would demonstrate personal jurisdiction is lacking.

While we acknowledge the possible slippery slope and the importance of the "effects test," we find that there are safeguards in place here to ensure due process. Specifically, economic harm may be sufficient to confer jurisdiction when it is alleged that the defendant caused the harm and is no stranger to the forum. *Logan Prod., Inc. v. Optibase, Inc.,* 103 F.3d 49, 54 (7th Cir.1996). Here, the Casinos are familiar with the forum. They have advertised and secured limited player memberships from over 20,000 Indiana residents, and they are in frequent contact with many others. They have contacted Gilliatte, his family, and his attorney, and, at least Caesar's, has brought an action in Indiana's probate court to satisfy Gilliatte's outstanding debt. Through their contact they are alleged to have learned that Gilliatte did not hold an economic interest in GGC's account, yet, still cashed a marker that drew on that account that was located in Indiana. Based on these contacts and the Casinos' alleged conduct, we find that the Casinos could or should have foreseen that GGC or its subrogee would seek legal recourse in Indiana.

Additionally, under the circumstances of this case, personal jurisdiction is reasonable for several reasons. Indiana clearly has an interest in ensuring that fraud is not perpetrated on its citizens, and several nonparty witnesses are in Indiana. *See Janmark v. Reidy,* 132 F.3d 1200, 1202 (7th Cir.1997). ("[T]he state in which the victim of a tort suffers the injury may entertain a suit against the accused tortfeasor."); *see also McGee,* 355 U.S. at 223, 78 S.Ct. 199 ("A state generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors.").

We conclude that if the Casinos cashed a marker each knew was not properly authorized by the Indiana account holder, Indiana jurisdiction is proper for three reasons: (1) Indiana has a genuine interest in affording its innocent citizens an opportunity to defend against the tortious acts of aliens and foreigners; (2) Indiana citizens should expect to not have to leave their backyard to defend what is rightfully theirs; and (3) for purposes of the Casinos' due process right, a defendant should reasonably anticipate being haled into an Indiana courtroom for tortiously converting an Indiana citizen's money.

The trial court erred in dismissing Chase's claim for lack of personal jurisdiction.

## II. Forum Non Conveniens

### A. Standard of Review

Indiana Trial Rule 4.4(C) and (D) provide the following standard of review:

(C) More convenient forum. Jurisdiction under this rule is subject to the power of the court to order the litigation to be held elsewhere under such reasonable conditions as the court in its discretion may determine to be just.

In the exercise of that discretion the court may appropriately consider such factors as:

(1) Amenability to personal jurisdiction in this state and in any alternative forum of the parties to the action;

(2) Convenience to the parties and witnesses of the trial in this state in any alternative forum;

(3) Differences in conflict of law rules applicable in this state and in the alternative forum; or

(4) Any other factors having substantial bearing upon the selection of a convenient, reasonable and fair place of trial.

(D) Forum Non Conveniens—Stay or Dismissal. No stay or dismissal shall be granted due to a finding of forum non conveniens until all properly joined defendants file with the clerk of the court a written stipulation that each defendant will:

(1) submit to the personal jurisdiction of the courts of the other forum; and

(2) waive any defense based on the statute of limitations applicable in the other forum with respect to all causes of action brought by a party to which this subsection applies.

■■■■ Indiana courts can only decline litigation due to forum when it is likely to create a "substantial injustice" to the defendant. *Employers Ins. of Wausau v. Recticel Foam Corp.,* 716 N.E.2d 1015, 1022 (Ind.Ct.App.1999). A mere inconvenience to a corporate defendant's employees does not create the type of injustice necessary to warrant a dismissal on *forum non conveniens* grounds. *U.S. v. Nat'l City Lines,* 334 U.S. 573, 589, 68 S.Ct. 1169, 92 L.Ed. 1584 (1948); *Burrington v. Ashland Oil Co., Inc.,* 134 Vt. 211, 356 A.2d 506, 510 (1976) ("The mere showing of inconvenience on the part of the defendant is not enough.").

Chase argues that the Casinos are sophisticated parties that were capable of soliciting and collecting debts from Indiana gamblers, and that a great number of the nonparty witnesses, e.g., GGC's representatives, members of Gilliatte's family, and Gilliatte's attorney, are located in Indiana. The Casinos argue that it would be inconvenient to try this matter in Indiana because its employees are not in Indiana and its nexus with Indiana is completely involuntary. Instead, the Casinos contend that Nevada is the most appropriate forum because it has a substantial interest in regulating Chase's claim, and Chase has a branch in Nevada.

■■■ "The convenience of non-party witnesses is usually the most important factor to consider in deciding whether to depart from the plaintiff's choice of forum." *In re Hanger Orthopedic Group, Inc. Sec. Litig.,* 418 F.Supp.2d 164, 168 (E.D.N.Y.2006). Here, non-party witnesses include employees of GGC and Chase, Gilliatte's family, and Gilliatte's attorney, Easter, all of whom are located in Indiana. The remaining witnesses are employees or agents of the Casinos. Contrary to the Casinos' argument that their nexus with Indiana is involuntary, the Casinos voluntarily marketed their services to Gilliate in Indiana, voluntarily extended credit to him, knowing that he was an Indiana resident, and voluntarily took markers drawn on Indiana bank accounts.[7]

For the foregoing reasons, we find the trial court abused its discretion in ruling Indiana is an inconvenient forum.

Reversed.

ROBB, J., and VAIDIK, J., concur.

---

**7.** The marker agreement's choice of law clause designating Nevada as the preferred forum has no bearing on Chase's action against the Casinos because Chase's claim arises from the Casinos' misconduct and not Gilliatte's debt.