**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 17 2012, 9:14 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT
ALPLY ARCHITECTURAL BUILDING SYSTEMS LLC:

**BRENT R. BORG**
Church, Church, Hittle & Antrim
Fishers, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ALPLY ARCHITECTURAL BUILDING SYSTEMS LLC, ALPLY, INC., and JOHN PETERS, | ) ) ) ) | |
| Appellants-Defendants, | ) ) | |
| vs. | ) ) | No. 29A02-1111-CC-1032 |
| CORRLINES LLC and DAVID J. SMITH, | ) ) | |
| Appellees-Plaintiffs. | ) | |

INTERLOCUTORY APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable Steven R. Nation, Judge
The Honorable Todd L. Ruetz, Magistrate
Cause No. 29D01-1012-CC-1559

**May 17, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Corrlines LLC, an Indiana business, contacted Alply Architectural Building Systems LLC ("Alply"), a Mississippi business, to offer its architectural drafting and drawing services. Alply accepted. Alply then offered additional drafting projects to Corrlines, which Corrlines accepted. The drafting services were performed in Corrlines' Indiana offices. Corrlines filed suit in Indiana against Alply for breach of contract. Alply moved to dismiss the suit based on lack of personal jurisdiction, which the trial court denied. Alply brings this interlocutory appeal, arguing that it has insufficient minimum contacts with Indiana for the trial court to exercise personal jurisdiction over it. Finding no error in the trial court's denial of Alply's motion to dismiss, we affirm.

**Facts and Procedural History**

The facts are derived from the jurisdictional allegations in Corrlines' second amended complaint, the exhibits attached thereto, and the affidavit of Alply's manager and part owner, John Peters. Corrlines is an Indiana corporation with its principal place of business in Carmel. Corrlines produces computer-aided architectural designs. David Smith is the principal shareholder and owner of Corrlines (collectively referred to as "Corrlines").

Alply is headquartered in DeKalb, Mississippi, and is engaged in the business of manufacturing high-end custom metal architectural panel systems, principally for use in hospitals, universities, and biomedical facilities.[1] Alply maintains a website that is accessible

---

[1] Alply avers that it is an Illinois corporation, while Corrlines alleged in its complaint that Alply is a Mississippi corporation. The state in which Alply is incorporated is irrelevant to the issue before us.

via the World Wide Web.  Alply principally conducts business in Mississippi, Washington, California, Texas, North Carolina, South Carolina, New York, and Alabama.  At any given time, it has approximately thirty-five to sixty projects in various stages of development. Alply does not have any offices or own any property in Indiana or deal with any Indiana-based brokers.

In September 2009, Smith sent an unsolicited voicemail and email to Alply offering Corrlines' services and products.  Alply accepted the offer and entered into a contract with Corrlines to draft a computer-aided design plan for one of its projects.  Alply subsequently solicited and entered into additional contracts with Corrlines for services and products for other Alply projects.  The contracts were set in writing in the form of written purchase orders via email.  None of the designs created by Corrlines involved a project located in Indiana. None of Alply's agents or employees travelled to Indiana to meet Smith.  All business was conducted through email, regular mail, and telephone.

On December 6, 2010, Corrlines filed a breach of contract complaint in Hamilton Superior Court against Alply, Alply, Inc. (collectively "Defendants"), and John Peters.  The complaint was amended twice, and the second amended complaint did not name Peters as a defendant.  The second amended complaint alleged that Defendants failed to pay Corrlines for completed drafting services and cancelled the remaining open contracts and prayed for damages in the amount of $17,238 plus statutory interest.

On February 25, 2011, Defendants filed a motion to dismiss for lack of personal jurisdiction.  Following a hearing, the trial court issued an order granting the motion to

dismiss with respect to Alply, Inc., finding that Alply, Inc., was dissolved in December 2007 prior to the dealings between Corrlines and Alply. The trial court found that with respect to Peters, Defendants' motion to dismiss was moot because Peters was not named as a defendant in the second amended complaint. However, with respect to Alply, the trial court denied the motion to dismiss. In relevant part, the trial court found that it had personal jurisdiction over Alply based on the following:

> 5. .... Over the following 14 months Alply and Corrlines entered into multiple contracts through which Alply purchased computer aided architectural draftings and designs from Corrlines. In turn, Alply used the draftings and designs to bid for contracts and install custom metal panels in construction projects outside the State of Indiana. Although Corrlines initially offered its services and products to Alply, subsequently, Alply solicited and obtained the services and products of Corrlines over a sustained period of time.
>
> 6. By purchasing Corrlines' services and products rendered, designed, manufactured, located and sold in Indiana, Alply has purposely availed itself of the privilege of conducting activities with this State thereby invoking the benefits and protections of its laws.

*Id*. at 9. Alply filed a motion to certify order for interlocutory appeal, which the trial court granted. This Court accepted the appeal.

**Discussion and Decision**

Initially, we note that Corrlines has not filed an appellee's brief.

> When the appellee has failed to submit an answer brief we need not undertake the burden of developing an argument on the appellee's behalf. Rather, we will reverse the trial court's judgment if the appellant's brief presents a case of prima facie error. Prima facie error in this context is defined as, at first sight, on first appearance, or on the face of it. Where an appellant is unable to meet this burden, we will affirm.

4

*Fifth Third Bank v. PNC Bank*, 885 N.E.2d 52, 54 (Ind. Ct. App. 2008) (citations and quotation marks omitted).

Alply contends that the trial court erred as a matter of law in finding that it had personal jurisdiction over it. Personal jurisdiction is the "court's power to bring an individual to its adjudicative process" and to enforce a judgment against that individual. *Am. Econ. Ins. Co. v. Felts*, 759 N.E.2d 649, 653 (Ind. Ct. App. 2001) (quoting BLACK'S LAW DICTIONARY 857 (7th ed. 1999)). The person attacking the court's jurisdiction "bears the burden of proof upon that issue by a preponderance of the evidence, unless the lack of jurisdiction is apparent upon the face of the complaint." *Attaway v. Omega*, 903 N.E.2d 73, 76 (Ind. Ct. App. 2009). Our review of the trial court's determination on the issue of personal jurisdiction is de novo. *JPMorgan Chase Bank, N.A. v. Desert Palace, Inc.*, 882 N.E.2d 743, 747 (Ind. Ct. App. 2008), *trans. denied*. However, to the extent that the trial court found facts to support jurisdiction, we review those factual findings for clear error. *Id*.

Indiana Trial Rule 4.4(A), Indiana's long-arm provision, provides that "a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States," and thus is coextensive with the requirements of the Federal Due Process Clause of the Fourteenth Amendment. *LinkAmerica Corp. v. Albert*, 857 N.E.2d 961, 965 (Ind. 2006).[2] The exercise of personal jurisdiction over a non-resident defendant

---

[2] "Rule 4.4(A) serves as a handy checklist of activities that usually support personal jurisdiction but does not serve as a limitation on the exercise of personal jurisdiction by a court of this state." *LinkAmerica*, 857 N.E.2d at 967. In *LinkAmerica*, our supreme court held that the catchall language, in essence, "reduce[s] analysis of personal jurisdiction to the issue of whether the exercise of personal jurisdiction is consistent with the Federal Due Process Clause." *Id.* at 967.

comports with the Due Process Clause when the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Thus, due process requires that (1) there be sufficient minimum contacts and (2) that the exercise of personal jurisdiction over the defendant comports with fair play and substantial justice.[3] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

The "minimum contacts" required to satisfy due process fall into two categories, general and specific.

> If the defendant's contacts with the state are so "continuous and systematic" that the defendant should reasonably anticipate being haled into the courts of that state for any matter, then the defendant is subject to general jurisdiction, even in causes of action unrelated to the defendant's contacts with the forum state.

> If the defendant's contacts with the forum state are not "continuous and systematic," specific jurisdiction may be asserted if the controversy is related to or arises out of the defendant's contacts with the forum state. Specific jurisdiction requires that the defendant purposefully availed itself of the privilege of conducting activities within the forum state so that the defendant reasonably anticipates being haled into court there. A single contact with the forum state may be sufficient to establish specific jurisdiction over a defendant, if it creates a "substantial connection" with the forum state and the suit is related to that connection. But a defendant cannot be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person.

*LinkAmerica*, 857 N.E.2d at 967 (citations and quotation marks omitted).

---

[3] Alply's argument is limited solely to the minimum contacts requirement. *See* Appellant's Br. at 8 n 2. Accordingly, we need not address the fair play and substantial justice requirement.

Because the facts found by the trial court are restricted to the Indiana contacts that Alply had with Corrlines, it appears that the trial court's ruling is based on specific jurisdiction.[4] Whether sufficient minimum contacts exist to give rise to specific jurisdiction is a fact-specific inquiry and is assessed on a case-by-case basis. *Keesling v. Winstead*, 858 N.E.2d 996, 1003 (Ind. Ct. App. 2006).

> Factors to consider when evaluating the defendant's contacts with the forum state are: (1) whether the claim arises from the defendant's forum contacts; (2) the overall contacts of the defendant or its agent with the forum state; (3) the foreseeability of being haled into court in that state; (4) who initiated the contacts; and (5) whether the defendant expected or encouraged contacts with the state.

*Id*. (quoting *Brockman v. Kravic*, 779 N.E.2d 1250, 1257 (Ind. Ct. App. 2002)).

Alply argues that none of the above factors weigh in favor of specific jurisdiction. While not all the factors support the exercise of specific jurisdiction, a sufficient number do. As to the first factor, Alply argues that its two prior Indiana projects and an annual trip to meet with an Indiana customer have nothing to do with Corrlines' breach of contract claim. That much is true, but Alply's contention completely ignores Alply's multiple contracts with

---

[4] The trial court's order does not mention the following Indiana contacts set forth in Peters' affidavit:

8. Alply LLC has undertaken two projects in Indiana, one for Getrag Corporate Group in Tipton, and another for Columbus East High School in Columbus. The Getrag project was the result of an unsolicited referral from a customer in Michigan, and the Columbus East project was the result of an unsolicited referral from an independent broker in Ohio. ….

9. [Peters] travel[s] to Indianapolis once a year to meet a customer, ProClad, Inc., which is headquartered in Noblesville, though the only work Alply LLC has performed with ProClad concerned a project located in Louisville, Kentucky.

Appellant's App. at 24. Whether these contacts are sufficient to find general jurisdiction is not a question that we need to address.

Corrlines for architectural designs for multiple projects. Alply's business dealings with Corrlines, an Indiana business performing its services for Alply in Indiana, are contacts with Indiana, and clearly Corrlines' breach of contract claim is based on its contracts with Alply. Turning to the fourth factor, the trial court found, and Alply does not dispute, that "[a]lthough Corrlines initially offered its services and products to Alply, Alply subsequently solicited and obtained the services and products of Corrlines over a sustained period of time." Appellant's App. at 9. Alply thus pursued an ongoing relationship with Corrlines. This ongoing relationship between Alply and Corrlines is also relevant to the third factor, as we think that by engaging in multiple contracts for Corrlines' services, services that were performed in Indiana, it is foreseeable that Alply could be haled into Indiana courts.[5] Accordingly, we find no error in the trial court's denial of Alply's motion to dismiss.

Affirmed.

VAIDIK, J., and BRADFORD, J., concur.

---

[5] Alply's argument to the contrary is unavailing because all the cases it relies on are distinguishable. In *Hotmix & Bituminous Equipment, Inc. v. Hardrock Equipment Corp.*, 719 N.E.2d 824, 830 (Ind. Ct. App. 1999), the services that the Indiana company provided for the New York company were performed in Ohio. In *Dura-Line Corp. v. Sloan*, 487 N.E.2d 469, 471 (Ind. Ct. App. 1986), the services that the Indiana resident performed for the Kentucky business consisted of calling someone in Minnesota to sell equipment located in Kentucky. Finally, in *Harold Howard Farms v. Hoffman*, 585 N.E.2d 18, 22 (Ind. Ct. 1992), the Indiana resident took his mare to the Michigan resident's farm in Michigan for breeding with the Michigan resident's stud.